**E. L. KLEWICKI COMPANY, INC., a Michigan Corporation, Plaintiff-Appellee, Cross-Appellant,**

v.

**AMERICAN SCREW PRODUCTS, an Ohio Corporation, Defendant-Appellant, Cross-Appellee.**

Nos. 81–1172, 81–1193.

United States Court of Appeals, Sixth Circuit.

Argued Aug. 25, 1982.

Decided Oct. 8, 1982.

Edward Malinzak, Paul T. Sorensen, Warner, Norcross & Judd, Grand Rapids, Mich., for defendant-appellant, cross-appellee.

T. Michael Doyle, Doyle, Carruthers, Hess & Ralls, Lansing, Mich., for plaintiff-appellee, cross-appellant.

Before MARTIN and KRUPANSKY, Circuit Judges, and NEESE,* District Judge.

PER CURIAM.

The E.L. Klewicki Company and American Screw Products Company appeal a decision of the District Court holding that American Screw is obligated to pay Klewicki a specific sum of money for services rendered. Because we find that the District Judge was not "clearly erroneous" in his findings of fact and that he applied the law correctly, we affirm. Fed.R.Civ.P. 52(a).

This case involves a dispute between a manufacturer's representative and its former principal over an alleged breach of contract and the resulting damages. The District Judge, with the consent of the parties, bifurcated the trial on the issues of liability and damages.

American Screw was concerned about slumping sales to one of its prime customers, Rockwell-Standard, Division of North American Rockwell. Rockwell-Standard had moved its corporate office to Troy, Michigan, in Klewicki's territory, and had changed its purchasing procedures to increase the influence of the corporate office. Since Mr. Klewicki was a personal acquaintance of Rockwell's purchasing agent, American Screw asked him to approach Rockwell on its behalf. Sales immediately increased. In the first four months of 1971, American sales to Rockwell were approximately $79,000. American named Klewicki as its corporate level representative to Rockwell in May of 1971. For the rest of 1971 (eight months), American's sales to Rockwell totaled approximately $398,000. In 1972, these sales totaled over $655,000. In 1973, sales rose to $1,159,000 and in 1974, American had sales totaling $1,537,000 to Rockwell. In the first quarter of 1975, American's sales to Rockwell totaled $371,-000. On April 1, 1975, American terminated Klewicki. In the remaining three quarters of 1975, American's sales totaled $585,-000 and in the first half of 1976, sales fell to slightly over $525,000.

Klewicki contends that American Screw promised to pay him five percent of the total sales to Rockwell. The District Court found that no specific compensation agreement existed, but that there was general

---

* Honorable C.G. Neese, District Judge, United States District Court for the Eastern District of Tennessee, sitting by designation.

understanding that Klewicki would receive *some* compensation. The District Court also found that since Klewicki did influence the sales of American Screw's products, thereby conferring a benefit on American Screw, he was entitled to recover in *quantum meruit.*

At the damages portion of the trial, Klewicki contended that his services should be valued at five percent. American Screw argued that Klewicki was entitled only to his expenses while on the job. The District Court awarded Klewicki one percent of the gross sales to Rockwell for the period involved. On appeal, Klewicki contends that the finding of "no agreement" is clearly erroneous. American Screw appeals the judge's decision to allow Klewicki's recovery in *quantum meruit.* Both parties appeal the District Judge's award of a one percent commission, Klewicki asserting that the award should be five percent, and American Screw contending that Klewicki should receive nothing.

We will reverse a finding of fact only when the decision of the District Judge is clearly erroneous. *See United States v. U.S. Gypsum,* 333 U.S. 364, 395, 68 S.Ct. 525, 541, 92 L.Ed. 746 (1948). *Johnson v. United States,* 600 F.2d 1218, 1222 (6th Cir. 1979). In the present case, the testimony was conflicting and sometimes vague. Although we might have decided the case differently *de novo,* we find the District Judge's decision clearly supported by the evidence.

Klewicki correctly states that our power of review is broader than normal because much of the testimony involved was in deposition form. *A.J. Industries, Inc. v. Dayton Steel Foundry Co.,* 394 F.2d 357, 361–62 (6th Cir. 1968); *Emmco Insurance Co. v. Wallenius Caribbean Line S.A.,* 492 F.2d 508, 512 (5th Cir. 1974). However, even under this broader standard, we see no reason to reach a different result.

We also find that the District Judge correctly applied the principle of *quantum meruit* under Michigan law. *Cascade Electric Co. v. Rice,* 70 Mich.App. 420, 245 N.W.2d 774 (1976); *Biagini v. Mocnik,* 369 Mich. 657, 120 N.W.2d 827 (1963). We agree with the District Judge's interpretation of the Michigan Supreme Court's holding in *Biagini.* In *Biagini,* the court found that the parties failed to agree to an essential contractual term and, therefore, did not have a contract. However, as the District Judge points out, the court held that the plaintiff was "entitled to recover what his labor rendered or materials furnished were reasonably worth." 369 Mich. at 659, 120 N.W. at 828. We see no difference between that situation and the present case.

American Screw, however, insists that *Arsham v. Banci,* 511 F.2d 1108 (6th Cir. 1975), bars Klewicki from recovery in this case. In *Arsham,* this court stated that "[a]n *unsuccessful* broker may not recover in *quantum meruit* when the principal subsequently sells to the same person whom the broker has contracted." 511 F.2d at 1115. However, American Screw ignores the following language in the same opinion.

> However, Arsham claims this is immaterial, and that the relationship of seller-purchasers which ultimately came into being between Banci and Bobbie Brooks resulted from his "opening the door." There is certainly evidence to support this position, and if the district court had made such a finding, this court would not be permitted to set it aside. Rule 52(a), Fed.R.Civ.P.

511 F.2d at 1115. In the present case, the District Judge made just such a finding. He concluded that Klewicki did influence the sales to Rockwell. Because that finding is not "clearly erroneous," Fed.R.Civ.P. 52(a), Klewicki is a *successful agent* and thus is not barred from recovery by *Arsham.*

Finally, we turn to the judge's award to Klewicki of a one percent commission on all sales to Rockwell. The District Judge was sitting as a chancellor in equity. Having already determined that Klewicki was entitled to some compensation, the judge was attempting to determine what sum would be "reasonable," "fair," or "just." As the District Judge noted, "[h]ow much is reasonable in any particular case is a question

of fact, not one of law. There is no rule of law by which the amount can be deductively determined." 1 Corbin on Contracts, § 99 at 445. At trial, the testimony was often conflicting. We agree with the District Judge that a one percent commission is reasonable.

The decision below is affirmed.