782 F.2d 1044
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
GEORGE W. VINT and KNOX NAPIER, Plaintiffs-Appellants,
v.
LOCAL UNION #20 OF THE INTERNATIONAL BROTHERHOOD OF
TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN & HELPERS OF
AMERICA AND ACE HARDWARE CORPORATION,
Defendants-Appellees.
 84-3911
 United States Court of Appeals, Sixth Circuit.
 12/2/85
 
 BEFORE: KEITH and KENNEDY, Circuit Judges, and EDWARDS, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 Plaintiffs George Vint and Knox Napier appeal from a district court order dismissing their wrongful discharge/unfair representation action against their former employer Ace Hardware Corporation (Ace) and Local Union No. 20 of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America (Union). In July 1977, plaintiffs filed a complaint in the United States District Court for the Northern District of Ohio alleging that defendant Ace Hardware discharged the plaintiffs in violation of the Collective Bargaining Agreement, the Union failed to fairly represent their grievances and that the defendants conspired to deprive plaintiffs of their rights to employment and representation.
 
 
 2
 After a four day bench trial held in January 1980, before the Honorable Don J. Young, the court entered judgment for the defendants. In its opinion and order the court found that the plaintiffs were not dismissed in violation of the collective bargaining agreement, and that defendants had not conspired to deprive plaintiffs of their rights to employment and representation. The court also concluded that, contrary to plaintiffs' contentions, the Union had not breached its duty to fairly represent the plaintiffs. For reasons set forth below, we affirm the district court judgment.
 
 
 3
 Plaintiffs George Vint and Knox Napier were employed by Ace as over-the-road truck drivers during 1976 and early 1977. During this period, the terms of their employment were governed by the National Master Freight Agreement (Master Freight Agreement), the Central States Area Over-The-Road Local Cartage Supplemental Agreement (Local Cartage Agreement) and the Ohio Rider Central States Area Over-The-Road Supplemental Agreement (Ohio Rider Agreement). As required by these agreements and federal regulations, each Ace driver kept a daily log showing his off-duty time, driving time and duty without driving time. Under Section E(2) of the Ohio Rider Agreement, any employee who failed to report to work for three consecutive working days without notifying Ace prior to starting time on the third day would be considered to have voluntarily quit. Section 46 of a supplemental Motor Freight Agreement proscribed Ace from discharging an employee without just cause and at least one written warning. On February 10, 1977, Ace notified George Vint that he had missed three consecutive days of work and was considered by Ace to have voluntarily quit. The same day, Ace's General Traffic Manager John Ryskie fired Knox Napier for repeatedly delaying freight.
 
 
 4
 In concluding that Mr. Vint had been properly terminated under the terms of the Ohio Rider provision, the district court found: (1) that Mr. Vint was an over-the-road driver for Act; (2) that Vint was stranded in a snowstorm in Findlay, Ohio on January 24, 1977; (3) that Mr. Vint did not return to Ace but rather rode back with another driver to a Ryder Rental terminal in Perrysburg, Ohio and consequently failed to punch out at the Ace terminal; (4) that all drivers were required to keep logbooks under DOT Regulations; (5) that Mr. Vint completed his logs for the trip and submitted them to the Company; (6) that Mr. Vint subsequently claimed he was not paid for the trip; (7) that Mr. Vint went to Ace on February 7 and 8, 1977 to discuss the matter, eventually changing his log book in order to get paid; (8) that Mr. Vint mistakenly believed his log book showed a violation of DOT regulations and noted this on his revised log; (9) that Ace refused to process Mr. Vint's log due to the DOT Regulation entry; (10) that Mr. Vint refused to change his log book a third time; (11) that throughout Mr. Vint's discussions with Ace personnel about his lost hours, Mr. Vint stated that he would not work until he received his pay; and (12) that Mr. Vint subsequently refused to take out his next scheduled three day run and therefore was considered a voluntary quit for failing to report for duty on three consecutive days. Based upon the above stated findings of fact Judge Young concluded that 'technically,' George Vint had been discharged in accord with the collective bargaining agreement.
 
 
 5
 In finding that there was just cause to discharge Mr. Napier the district court made the following findings of fact: (1) that Mr. Napier was an over-the-road driver for Ace; (2) that in late 1976 Mr. Napier received a twenty-day driver's license suspension for driving while intoxicated; (3) that Ace had a policy of allowing suspended drivers to work in the 'well' (a job which did not require driving); (4) that Mr. Napier refused to work in the well because it was inconvenient; (5) that thereafter Mr. Van Alstine, former Ace Traffic Manager, approved a four week medical leave of absence; (6) that just prior to his leave Mr. Napier received a warning notice for delay of freight; (7) that upon his return from leave Mr. Napier received another warning for delay of freight; (8) that Mr. Napier argued he had been late due to his inability to find a logbook in the mailroom, despite evidence the logbooks were in fact available; (9) that again on February 10, 1977 Mr. Napier reported for work late, allegedly because he was having problems with the headlights on his truck; and (11) that Mr. Napier was subsequently discharged for repeated delays of freight. Based upon the above stated findings of fact, Judge Young concluded the plaintiffs were not discharged in violation of the collective bargaining agreements. See Opinion and Order at 13.
 
 
 6
 On appeal, plaintiffs first argue that the district court's findings are clearly erroneous. Mr. Vint contends that Ace's determination that he voluntarily quit violates Section E(2) of the Ohio Rider Supplemental Agreement because he did not substantiate the finding with his signed resignation. This argument is without merit. Section E(3) of the Ohio Rider's agreement specifically exempts dismissal due to unauthorized three-day absences from the voluntary resignation requirement.
 
 
 7
 Mr. Vint next contends that the district court erred in finding that he missed three consecutive days, February 8, 9, 10 and was therefore discharged for good cause. Vint argues that on February 8, 1977 he reported to work in good faith but was instructed to return home in order to recover his hours lost during the snowstorm. Although the record is ambiguous, we are unable to conclude that the district court clearly erred in determining that since Mr. Vint refused to work for three consecutive days he was properly discharged under the bargaining agreement. The record establishes that, contrary to Mr. Vint's contention, he did not intend to work on February 8, 1977. Thomas Rohen, Ace Traffic Operations Manager, testified in his deposition that on Monday, February 7, 1977, Mr. Vint's day off, Mr. Vint came into his office to discuss his paycheck problems. Mr. Vint stated to Rohen that he would not go out on his run on Tuesday, February 8th until he was paid for his lost hours. Jt. Appendix at 453. Similarly, in plaintiffs' Exhibit 12, William Tarazewich, Ace General Manager, stated that on the morning of Tuesday, February 8, 1977, Mr. Vint again refused to correct his log entries, retorting 'I'm not going to work until I get paid,' and walked out of the office. Jt. Appendix at 72; See also testimony of James Spicuzza, Jt. App. at 267, 268. We find no evidence in the record which clearly refutes the testimony that Mr. Vint did not intend to work on Tuesday, February 8, 1977, and in fact left without 'reporting to work' within the meaning of the bargaining agreement.[1] Nor did the district court err in rejecting plaintiff's testimony that he was instructed by Mr. Rohen to go home in order to recover his lost hours. In his deposition, Mr. Rohen denied instructing Mr. Vint to return home. Plaintiffs did not object to the use of Mr. Rohen's deposition and this Court is unable to conclude this evidence is without probative weight or that the district court's determinations based on deposition testimony were not clearly supported by the record. See E. L. Klewicki Co. v. American Screw Products, 690 F.2d 85, 87 (6th Cir. 1982); A.J. Industries, Inc. v. Dayton Steel Foundry Co., 394 F.2d 357, 361-62 (6th Cir. 1968).
 
 
 8
 Plaintiff Knox Napier first contends the district court clearly erred in finding he was properly discharged under the bargaining agreement for repeated delays of freight. Mr. Napier argues that the incident for which he received his first warning should not be counted because he protested the charge to the Union. The record does not support this contention. Plaintiff could produce no letters of protest and Union officials denied ever receiving the protest. Plaintiff Napier next alleges that he was improperly discharged for having his license suspended and was not accorded the option of working in the 'well'. However, the record shows that Mr. Napier was discharged for falsifying documents and taking a fraudulent medical leave after his license was suspended. The record further shows that Mr. Napier was offered a position in 'the well' after his suspension, but he refused to take it. In finding Mr. Napier was properly discharged for delay of freight, the district court relied on substantial evidence showing plaintiff was repeatedly late without just cause. Mr. Napier contended at trial that his first delay on February 8, 1977 was due to the unavailability of a logbook in his mailbox. Napier testified that he was forced to wait until 8:00 a.m. when the office opened and he could gain access to his logbook. This action made him late for his stop. To support this testimony, Napier presented Ron Hext who testified that he helped Napier search for the logbook. However, upon cross-examination Mr. Hext reviewed his time card for February 8, 1977 and verified that he was not in Perrysburg on February 8, 1977. Also, in contradiction to Napier's testimony, James Spicuzza, chief steward, testified that logbooks were available in the drivers' room the morning of February 8th. Napier was issued a warning letter for February 8, 1977.
 
 
 9
 On February 10, 1977 Mr. Napier again reported to work at a time which made him late on his deliveries. Mr. Napier testified that he was late because of problems with his headlights. The record contains no evidence which corroborates this contention, but shows Mr. Napier's truck equipment checked out in working order the previous evening after he returned to Perrysburg on February 9, 1977 at 7:41 p.m. In light of the conflicting evidence, this Court is unable to conclude Mr. Napier presented the district court with acceptable excuses for the delays of freight. Therefore, the district court's findings that the warning letters were justified and the discharge was not in violation of the bargaining agreement are not clearly erroneous.
 
 
 10
 The plaintiffs next contend that the district court clearly erred in finding that the defendants did not conspire to deprive the plaintiffs of their rights to employment and fair representation. Plaintiffs allege the defendants conspired to discharge them because Mr. Vint, supported by Mr. Napier, had run for the position of Shop Steward against another employee, James Spicuzzo. Plaintiffs allege that Mr. Vint's election bid was contrary to the wishes of the president of the Union; that Spicuzzo wanted to revenge himself on the plaintiffs; that Spicuzzo roomed with the Union's business agent, Raymond Navarro, and was carrying on a romance with the corporation's payroll clerk, Janet Lindenmulder. In further support of their conspiracy allegation, plaintiffs submitted that Spicuzzo had told the corporation's dispatcher, Tom Rohen, he could help him get rid of Vint and Napier, who were 'troublemakers'.
 
 
 11
 The district court evaluated the contradictory evidence, and concluded no conspiracy had been shown. In fact the court determined that far from establishing any vindictiveness on the part of James Spicuzzo, the evidence showed that after the election, when Spicuzzo learned that the corporation's Traffic Manager Floyd Van Alstine had reneged on his promise to pay Vint extra wages if he ran against Spicuzzo, the latter made Van Alstine pay Vint as promised. Upon review of the record as a whole, we conclude the district court correctly determined that no evidence supported plaintiffs' conspiracy allegations.
 
 
 12
 Plaintiffs finally contend that the district court erred in ruling that absent proof of bad faith no breach of the Union's duty of fair representation could be found. However, in determining this issue, the district court did not require proof of bad faith:
 
 
 13
 A union breaches its duty of fair representation in the processing of a member's grievance 'only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory or in bad faith.' Poole v. Bud Co., 706 F.2d 181, 183 (6th Cir. 1983) (quoting Vaca v. Sipes, 386 U.S. 171, 190 (1967)). The requisite arbitrariness is established when the union is shown to have handled a grievance capriciously, perfunctorily, or without rational explanation. Poole, 706 F.2d at 183 (citing Vaca, 386 U.S. at 194; Farmer v. ARA Services, Inc., 660 F.2d 1096 (6th Cir. 1981); Ruzicka v. General Motors Corp., 649 F.2d 1207, 1211 n.3, 1212 (6th Cir. Sec. 981) (Ruzicka II), cert. denied, ---- U.S. ----, 104 S.Ct. 424 (1983)). While it is not incumbent upon an employee to show bad faith to succeed on its breach of duty claim, the law in this circuit is clear that mere negligence or mistaken judgment on the part of the union does not suffice to impose union liability. Poole, 706 F.2d at 183 (citing Ruzicka v. General Motors Corp., 523 F.2d 306, 310-311 (6th Cir. 1975) (Ruzicka I)); Dill v. Greyhound Corp., 435 F.2d 231, 238 (6th Cir. 1970), cert. denied, 402 U.S. 952 (1971); Whitten v. Anchor Motor Freight, 521 F.2d 1335, 1341 (6th Cir.), cert. denied, 425 U.S. 981 (1976)). Application of these principles to the cause sub judice mandates holding that the union did not breach its duty to represent either plaintiff fairly.
 
 
 14
 Joint Appendix at xxii. Thus, the district court analyzed the plaintiff's breach of fair representation claim under the proper legal standards.
 
 
 15
 The record does not establish that the union processed plaintiffs' grievances in an arbitrary, perfunctory or hostilely discriminatory manner. See Poole v. Budd Co., 706 F.2d 181, 183 (6th Cir. 1983); Balowski v. International Union UAW, AFL-CIO, 372 F.2d 829, 835 (6th Cir. 1967). On the contrary, the record shows the Union diligently investigated and processed the plaintiff's grievances and fulfilled its duty of representation to the plaintiffs.
 
 
 16
 Accordingly, we affirm on the basis of the district court opinion.
 
 
 
 [1]
 The only definition of the phrase 'report to work' established by the record is found in the testimony of Traffic Operations Manager Rohen who indicated that an employee punches the clock to show he is ready to take his run. Jt. Appendix at 451. Other than plaintiff Vint's testimony, the record does not establish whether Mr. Vint punched the clock or otherwise indicated he was prepared to take his truck out