Jesus COLUNGA, et al., Plaintiffs,

v.

William G. YOUNG and William G. Young's Evergreens, Defendants.

No. G86–740 CA6.

United States District Court,
W.D. Michigan, S.D.

June 9, 1989.

Opinion on Prejudgment Interest,
Costs and Attorney's Fees
July 24, 1989.

Opinion on Motion for New Trial
Aug. 1, 1989.

Opinion on Post–Trial Motions
Sept. 7, 1989.

Deborah L. McNabb, Gary Gershon, Michigan Migrant Legal Assistance Project, Grand Rapids, Mich., for plaintiffs.

William G. Young, in pro per.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

HILLMAN, Chief Judge.

This cause came on for trial of plaintiffs' complaint for damages and equitable relief under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, the Migrant and Seasonal Agricultural Worker Protection Act ("MSAWPA"), 29 U.S.C. § 1801 *et seq.*, the Federal Insurance Contribution Act ("FICA"), 26 U.S.C. § 3101 *et seq.*, and Michigan common law, and of defendant's counter-complaint for breach of contract. The action was tried upon the facts without a jury. The parties have submitted post-trial briefs. The court has duly considered all the evidence and arguments of record, and makes the following findings of fact and conclusions of law. Fed.R.Civ.P. 52(a).

### I. Findings of Fact

1. Plaintiffs Julian, Anastasia, Jesus, Meliton, Cecilio, Veronica, Francisco, Rosa Maria, Mary Lou, and Juan Colunga, and Claudio, Sr., Guadalupe, Elba, Claudio, Jr., Ruth, and Lorena Juarez, are migrant farm workers from Texas. Plaintiffs worked

cutting, gathering, tying, and loading evergreen boughs for defendant William G. Young in Oceana County, Michigan at various times between October 2 and November 21, 1985.

2. At all relevant times Young was the sole proprietor of an evergreen bough production and marketing business headquartered in Monroe County, Michigan.

3. Young's business consisted of finding and identifying uncultivated evergreens of desirable species throughout northern Michigan, purchasing cutting rights from landowners, hiring laborers to cut, gather, tie and load boughs from designated trees, trucking rough-cut boughs to other locations for processing, and selling and delivering processed boughs to customers, primarily for re-sale to the Christmas market.

4. Plaintiffs were unemployed before they met Young in 1985. Earlier in the year they had been picking apples, but voluntarily left that job before beginning negotiations with Young.

5. Young negotiated his relationship with plaintiffs through their spokesperson Jesus Colunga on October 1, 1985. The purported agreement between the parties was not reduced to writing.

6. Plaintiffs understood that Young would pay them $60 per ton of boughs cut and gathered, plus transportation and housing costs of ten cents per mile and $5 per worker per day, plus a $20 per ton bonus if they worked until November 21. Plaintiffs also understood they would make an additional $4–$6 per hour when Young asked them to clean bough gathering sites, and $6 per hour subject to a $175 ceiling per load when Young asked them to load boughs from the gathering site onto his truck.

7. Young understood that he would pay plaintiffs $60 per ton of boughs for approximately ten days if plaintiffs would cut and gather ten tons or more per day. If plaintiffs successfully met this requirement, Young would pay an additional $60 per ton for tying the boughs in Lambertville, Michigan. After completion of the tying in Lambertville, Young would pay a bonus of $5 per worker per day, plus ten cents per mile transportation costs. Young does not dispute that at various times he agreed to pay plaintiffs around $4–$6 per hour for loading and cleaning. He claims, however, that all loading and cleaning wages were paid.

8. At the time he recruited plaintiffs, Young did not give to each plaintiff a written statement of the terms and conditions of employment. During the relationship, Young did not make, keep, and preserve records of each plaintiff's wages and hours, nor did he provide each plaintiff an itemized wages and hours record of each pay period worked. Similarly, Young did not withhold Social Security tax from plaintiffs' pay, nor did he pay any amount of Social Security tax to the United States.

9. At all relevant times, Young was unaware of the specific requirements of the federal labor and tax statutes, and acted in a good faith belief that they did not apply to his business.

10. In regard to cutting and gathering work, to the extent that plaintiffs' records and testimony of wages received and hours worked contradict Young's records and testimony, plaintiffs' presentation is more credible.

11. In regard to cleaning and loading work, to the extent that Young's records and testimony of wages received and hours worked conflicts with plaintiffs' records and testimony, Young's presentation is more credible.

12. Young paid plaintiffs approximately $7,200. About $5,700 of this total amount was in exchange for plaintiffs' cutting and gathering work. About $1,500 was in exchange for cleaning and loading. Young paid all amounts owing to plaintiffs for cleaning and loading. Cleaning and loading hourly wages exceeded $3.35.

13. According to plaintiffs' Exhibits 2 and 5, plaintiffs worked a total of 389 person-days for Young cutting and gathering boughs. These exhibits do not reflect the number of persons and hours worked cleaning and loading. With an average eight hour day, the total person-hours worked cutting and gathering was 3,112.

At the prevailing minimum wage of $3.35 per hour, Young owes plaintiffs a total minimum wage of $10,425.20. Young paid plaintiffs $5,700 for cutting and gathering work. The unpaid minimum wage thus amounts to $4,725.20.

14. Young located the land and obtained the cutting rights where plaintiffs worked. Young showed plaintiffs where to work and told them not to work outside specified boundaries. Young demonstrated to plaintiffs how to cut, gather, and tie boughs efficiently, and explained the distinguishing characteristics of desirable species. Plaintiffs themselves chose the days and hours worked. Young cut down particular pine and fir trees and instructed plaintiffs to cut boughs from the felled trees, although plaintiffs also cut boughs from unfelled trees selected by themselves. Young chose the piece rate paid to plaintiffs. Young transported boughs to distribution points for marketing purposes. Young was the only person who dealt with customers. Young periodically visited plaintiffs' work site and criticized their performance. Young reserved the power to reject unsuitable boughs tendered by plaintiffs.

15. Young exercised pervasive overall control of the bough production and marketing business, and he retained the right to significantly control the details of plaintiffs' harvesting activities.

16. Young provided plaintiffs with the shears, twine, and boxes used in cutting and gathering boughs. Plaintiffs at times cut boughs with their own machete. Young owned the tractor-trailer used to transport the boughs for processing and marketing. On one occasion, one of plaintiffs' pickup trucks was used to load boughs.

17. Plaintiffs had negligible capital invested in bough cutting and gathering. Young's investment was significantly greater.

18. Plaintiffs had no real opportunity to sell boughs they cut and gathered to anyone other than Young. Plaintiffs' profit or loss substantially depended only upon their rate of production, not their management of the cutting and gathering process.

19. Plaintiffs had no previous experience harvesting evergreen boughs before coming to work for Young. Although some experience and judgment is helpful in spotting desirable species and cutting efficiently, bough harvesting is essentially an uncomplicated, rote activity involving physical aptitude rather than learned and developed skill.

20. Plaintiffs' relationship with Young was temporary, but it was exclusive and encompassed the bulk of the 1985 bough harvesting season.

21. Plaintiffs' cutting, gathering, tying, and loading of boughs was an integral part of Young's bough production and marketing business.

22. Plaintiffs worked long hours for low wages. They had no choice but to sell their boughs to Young. They were economically dependent on Young's business.

II.  Conclusions of Law

1. Plaintiffs did not prove at trial that they substantially relied upon Young's promise of employment by leaving or refusing other specific jobs in order to work harvesting boughs. Accordingly, plaintiffs have no cause of action for promissory estoppel under Michigan common law. *Dumas v. Auto Club Ins. Assoc.*, 168 Mich. App. 619, 425 N.W.2d 480, 489–90 (1988) (per curiam).

2. In 1985, FLSA required "employers" to pay a minimum wage of $3.35 per hour to "employees," and to make, keep, and preserve certain payroll records. 29 U.S.C. §§ 206(a)(1), 211(c); 29 C.F.R. §§ 516.-2(a)(7), 516.6(a)(1).

3. Certain employees employed in "agriculture" are exempt from the FLSA minimum wage provision. 29 U.S.C. § 213(a)(6).

4. Employers carry the burden of showing their entitlement to FLSA exemptions, which are narrowly construed against them. *Usery v. Yates*, 565 F.2d 93, 97 (6th Cir.1977).

5. Young did not prove at trial by a preponderance of the evidence that plaintiffs' cutting and gathering of uncultivated

evergreen boughs was employment in "agriculture" within the meaning of the FLSA. 29 U.S.C. § 203(f); 29 C.F.R. §§ 780.114, 780.115. Young is not exempt from the FLSA.

6. In 1985 Young was an "employer" within the meaning of the FLSA. 29 U.S.C. § 203(d).

■ 7. Similarly, under the totality of circumstances, plaintiffs were Young's "employees" within the meaning of the FLSA. Plaintiffs were not independent contractors. 29 U.S.C. § 203(e)(1); *Donovan v. Brandel*, 736 F.2d 1114, 1117–20 (6th Cir.1984). *See also McLaughlin v. Seafood, Inc.*, 861 F.2d 450, 452–53 (1988), *amended*, 867 F.2d 875, 876–77 (5th Cir. 1989); *Secretary of Labor v. Lauritzen*, 835 F.2d 1529, 1535–39 (7th Cir.1987), *cert. denied*, — U.S. —, 109 S.Ct. 243, 102 L.Ed.2d 232 (1988); *Donovan v. Gillmor*, 535 F.Supp. 154, 159–63 (N.D. Ohio), *appeal dismissed*, 708 F.2d 723 (6th Cir.1982).

8. Young is liable to plaintiffs under the FLSA for unpaid minimum wages in the amount of $4,725.20. 29 U.S.C. §§ 206(a)(1), 215(a)(2), 216(b).

■ 9. Plaintiffs are entitled to prejudgment interest on the foregoing amount. *See McClanahan v. Mathews*, 440 F.2d 320, 324–26 (6th Cir.1971). Although plaintiffs have not specifically requested such interest, their claim has not been waived. *Bowers v. Firestone Tire & Rubber Co.*, 800 F.2d 474, 478–79 (5th Cir. 1986). The court will order plaintiffs to file a calculation of prejudgment interest in harmony with the Sixth Circuit's observations in *Equal Employment Opportunity Commission v. Wooster Brush Co. Employees Relief Ass'n*, 727 F.2d 566, 578–79 (6th Cir.1984).

■ 10. Young failed to pay plaintiffs minimum wage because of his good faith belief that he had paid what was owed under the employment "contract." In light of the complex and conflicting case law defining who is an "employee" under the FLSA, *see Lauritzen*, 835 F.2d at 1539–45 (Easterbrook, J., concurring), Young had reasonable grounds for believing that plaintiffs were independent contractors and that the wage payment at issue did not violate the statute. Young is and was in 1985 a small-scale, rather substantially unsophisticated businessman. The court in its discretion believes that an award of FLSA liquidated damages is not warranted under these circumstances. 29 U.S.C. §§ 216(b), 260; *McClanahan*, 440 F.2d at 322.

11. Plaintiffs are entitled to a declaratory judgment that Young failed to pay them minimum wage from October 2 to November 21, 1985. 28 U.S.C. § 2201.

■ 12. Plaintiffs are not entitled to an injunction against future FLSA violations by Young. 29 U.S.C. § 216(b); *Morelock v. NCR Corp.*, 546 F.2d 682, 688 (6th Cir. 1976), *vacated on other gds.*, 435 U.S. 911, 98 S.Ct. 1463, 55 L.Ed.2d 503 (1978) ("[i]n actions pursuant to § 216(b) individuals are limited to seeking legal remedies and are precluded from obtaining injunctive relief"). *Cf. Bush v. State Industries, Inc.*, 599 F.2d 780 (6th Cir.1979) (discussing Congress' creation of private injunctive remedy for 29 U.S.C. § 215(a)(3), not section 215(a)(2) or 211(c) violations).

■ 13. Plaintiffs are entitled to a reasonable attorney's fee and costs incurred pursuing their FLSA claim. 29 U.S.C. § 216(b). The court will order plaintiffs to file a petition for attorney's fees and costs in accordance with the principles set forth in *United Slate, Tile and Composition Roofers, Damp and Waterproof Workers Ass'n, Local 307 v. G & M Roofing and Sheet Metal Co., Inc.*, 732 F.2d 495, 501–505 (6th Cir.1984).

■ 14. In 1985, the MSAWPA required "agricultural employers" using "migrant agricultural workers" to disclose in writing at the time of recruitment the terms and conditions of employment, to make, keep, and preserve certain itemized payroll records and to provide each worker a written statement of those records for each pay period, and to pay all wages when due. 29 U.S.C. §§ 1821(a), 1821(d)(1), 1821(d)(2), 1822(a).

**1486**

15. In 1985 Young was an "agricultural employer" within the meaning of the MSAWPA. 29 U.S.C. § 1802(2).

■ 16. In 1985 plaintiffs were "migrant agricultural workers" within the meaning of the MSAWPA, as they were engaged in the handling of horticultural commodities. 29 U.S.C. §§ 1802(8)(A), 1802(3); *Bracamontes v. Weyerhaeuser Co.*, 840 F.2d 271, 273–77 (5th Cir.), *cert. denied*, —— U.S. ——, 109 S.Ct. 141, 102 L.Ed.2d 113 (1988); *Bresgal v. Brock*, 833 F.2d 763, *amended*, 843 F.2d 1163, 1165–68 (9th Cir.1987).

17. It is not inconsistent to hold that Young was not engaged in agriculture for FLSA exemption purposes, but was engaged in agriculture for purposes of coverage under the MSAWPA. The relevant MSAWPA provisions define agriculture more broadly than the FLSA exemption, reflecting Congress' remedial purpose to protect migrant workers under the MSAWPA and to circumscribe exemptions from minimum wage requirements under the FLSA. *Cf. Gillmor*, 535 F.Supp. at 160 (Congress may treat migrant workers as FLSA employees while exempting them from employee status under the Internal Revenue Code).

18. Plaintiffs did not prove at trial that Young violated MSAWPA's prohibition in regard to knowing provision of misleading information to migrant agricultural workers. 29 U.S.C. 1821(f).

■ 19. Aside from his failure to pay minimum wage for plaintiffs' cutting and gathering work, Young did not violate without justification any working arrangement made with plaintiffs. 29 U.S.C. § 1822(c). As stated earlier, Young complied with the agreements concerning cleaning and loading. The "arrangement" between plaintiffs and Young regarding cutting and gathering is not an enforceable contract, because the minds of the parties never met on the essential terms of the total price per ton of boughs produced, the conditional nature of the parties' performance, Young's view of the "arrangement" as a "requirements" contract, and the duration of the contract. Accordingly, the "ar-

rangement" did not include payment of the various bonuses and other contract damages claimed by plaintiffs. Rather, the arrangement must be construed as a quasi-contract implied at law, and plaintiffs are entitled only to recovery in *quantum meruit. See, e.g., E.L. Klewicki Co., Inc. v. American Screw Products*, 690 F.2d 85, 87 (6th Cir.1982). Plaintiffs did not prove at trial that the reasonable value of their cutting and gathering work exceeded $3.35 per hour. Therefore, the FLSA minimum wage award provides plaintiffs an adequate *quantum meruit* recovery for Young's breach of the cutting and gathering "arrangement" by his failure to pay minimum wage.

■ 19. Young violated MSAWPA's wage payment, disclosure, and record keeping requirements. 29 U.S.C. §§ 1821(a), 1821(d)(1), 1821(d)(2), 1822(a).

20. Young's violations were "intentional" within the meaning of the MSAWPA, and therefore he is liable to plaintiffs for actual or statutory damages or other equitable relief. 29 U.S.C. § 1854; *Bueno v. Mattner*, 829 F.2d 1380, 1382, 1384–86 (6th Cir.1987), *cert. denied*, —— U.S. ——, 108 S.Ct. 1994, 100 L.Ed.2d 226 (1988).

■ 21. Plaintiff's actual damages stemming from Young's violation of MSAWPA's wage payment provision, 29 U.S.C. § 1822(a), are compensated by the FLSA minimum wage award. Plaintiffs did not prove at trial any actual damages stemming from Young's violation of MSAWPA's disclosure and record keeping requirements, 29 U.S.C. §§ 1821(a), 1821(d)(1), 1821(d)(2).

■ 22. In view of all the circumstances of the case, including the compensatory and deterrent purposes of the MSAWPA's statutory damage provision, the total amount of the judgment Young will have to pay, the nature, persistence, and culpability of Young's MSAWPA violations, and statutory damage awards in similar cases, an MSAWPA statutory damage award is appropriate in this case in the amount of $75 per plaintiff per violation. 29 U.S.C.

§ 1854; *Bueno v. Mattner*, 633 F.Supp. 1446, 1467–68 (W.D. Mich.1986) (Enslen, J.), *aff'd*, 829 F.2d 1380 (6th Cir.1987), *cert. denied*, —— U.S. ——, 108 S.Ct. 1994, 100 L.Ed.2d 226 (1988). Statutory damages thus amount to $75 multiplied by 16 plaintiffs multiplied by 4 violations, or $4800 total.

23. Plaintiffs are entitled to a declaratory judgment that Young violated the wage payment, disclosure, and record keeping provisions of the MSAWPA from October 2 to November 21, 1985. 28 U.S.C. § 2201.

24. Plaintiffs are not entitled to enjoin Young from future violations of the MSAWPA. Plaintiffs made no effort at trial to establish the standard prerequisites for injunctive relief, such as inadequacy of the legal remedy, irreparable harm, a favorable balance of hardships, and harm to the public in the absence of the injunction. 29 U.S.C. § 1854.

25. In 1985, FICA imposed a 5.7 percent "Social Security" tax on individual income, to be deducted from the individual's wages and paid to the United States by his or her employer. 26 U.S.C. §§ 3101(a), 3102(a), 3102(b).

26. Young violated FICA by failing to withhold and pay Social Security taxes owed by plaintiffs. *See Sachs v. United States*, 422 F.Supp. 1092, 1094–95 (N.D. Ohio 1976). Plaintiffs are entitled to a declaratory judgment to that effect. 28 U.S.C. § 2201. Plaintiffs are likewise entitled to an order directing Young to comply with whatever steps the Internal Revenue Service, the Social Security Administration, and any other appropriate agencies require in order to insure that all wages reflected in this opinion, totalling $11,925.20 ($10,-425.20 required minimum wage for cutting and gathering, plus $1,500 for cleaning and loading) before pro rata allocation to individual plaintiffs, will be credited to each plaintiff's records for tax and benefit purposes. The order will appoint plaintiffs' counsel as compliance monitor to insure that Young contacts the appropriate agencies and accomplishes the correction of plaintiffs' records. The FICA remedial order will be incorporated in the final judgment.

27. Young did not prove at trial the existence of an enforceable contract based upon a meeting of the parties' minds regarding the essential terms of the contract. Accordingly, Young is entitled only to *quantum meruit* recovery for his expenditures. Young was adequately compensated by plaintiffs' labor and production of boughs. Young has no cause of action on his breach of contract counterclaim. *See E.L. Klewicki Co., Inc.*, 690 F.2d at 87 (applying Michigan contract law).

28. Final judgment in accordance with these findings of fact and conclusions of law will issue following plaintiffs' submission of the materials specified in the accompanying order.

### ON PREJUDGMENT INTEREST, COSTS AND ATTORNEYS' FEES

On June 9, 1989 the court entered Findings of Fact and Conclusions of Law in this matter. The court's findings and conclusions established, among other things, the liability of defendants William G. Young and William G. Young's Evergreens to plaintiffs under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, for unpaid minimum wages in the amount of $4,725.20. Along with its findings and conclusions, the court ordered plaintiffs to submit requests for or waivers of prejudgment interest, costs, and attorneys' fees regarding the FLSA award. *See* 29 U.S.C. § 216(b); *McClanahan v. Mathews*, 440 F.2d 320, 324–26 (6th Cir.1971).

Plaintiffs have timely submitted a petition for prejudgment interest and a separate petition for attorneys' fees and costs. Young has not responded to these submissions within the time allowed by the court. The court has thoroughly reviewed the two petitions.

The petition for prejudgment interest complies with the general guidelines discussed by the Sixth Circuit in *Equal Employment Opportunity Commission v. Wooster Brush Co. Employees Relief Ass'n.* 727 F.2d 566, 578–79 (6th Cir.1984).

Specifically, plaintiffs' requested 12 percent compound annual interest rate would seem to at least roughly reflect Young's cost of borrowing from the time plaintiffs' claim accrued to the present. Plaintiffs' calculations likewise appear correct. Because the request extends only through June 9, 1989, the court in accordance with those calculations will add $98.24 to reflect the additional interest accrued from June 9 through the date of the accompanying judgment. IT IS ORDERED that plaintiffs' petition for prejudgment interest on the FLSA award is approved in the amount of $2450.80.

Similarly, the petition for reasonable attorneys' fees satisfies the general standards set forth in *United Slate, Tile and Composition Roofers etc. v. G & M Roofing and Sheet Metal Co., Inc.,* 732 F.2d 495, 501–05 (6th Cir.1984). Plaintiffs have produced adequate contemporaneous documentation of hours expended, and some outside verification of the reasonableness of requested hourly rates. The court finds plaintiffs' stated hours and rates to be reasonable for an FLSA case of this size in this jurisdiction. Additionally, plaintiffs have satisfactorily segregated out-of-court time expended on the FLSA claim from time spent on other claims, and have persuaded the court that all in-court time should be compensable in view of the impossibility of separating FLSA from non-FLSA aspects of the trial. IT IS ORDERED that the court in its discretion approves plaintiffs' petition for attorneys' fees under 29 U.S.C. § 216(b) in the amount of $12,322.95.

■ Plaintiffs have not segregated FLSA from non-FLSA costs. Nevertheless, the court and deposition fees plaintiffs itemize are compensable under Fed.R. Civ.P. 54(d) and 28 U.S.C. § 1920. Travel and telephone costs are not generally recoverable under Rule 54 and section 1920, but are recoverable under the remedial and thus more broadly interpreted cost-shifting aspect of section 216(b). *Herold v. Hajoca Corp.,* 864 F.2d 317, 323 (4th Cir.1988), *cert. denied,* — U.S. ——, 109 S.Ct. 3159, 104 L.Ed.2d 1022 (1989). These latter costs

would have been incurred on the FLSA claim alone, regardless of the presence of other claims.

Although the $1,947 plaintiffs request for travel seems large at first glance, this figure reflects the transportation of a dozen or more people from Texas to Michigan for a period of several days. The court does not doubt that taxing this cost to defendants comports with the Congressional purpose behind section 216(b), by insuring that each plaintiff would not be deterred from exercising the right to be present in court during the prosecution of his or her FLSA cause. IT IS ORDERED that plaintiffs' petition for costs under 29 U.S.C. § 216(b) is approved in the amount of $3,255.77.

ON MOTION FOR NEW TRIAL

Defendant William G. Young has petitioned the court under Fed.R.Civ.P. 59(a)(2) to grant him a new trial in this cause. He seeks retrial on grounds that plaintiffs' testimony was perjured, and that the bench trial violated his right to a jury trial. He contends that he could not afford to pay a lawyer to represent him at trial, and consequently "drowned in the mire of legalities." He further contends that he cannot afford to appeal this court's adverse decision or pay the judgment entered against him.

■ The grant or denial of a new trial is purely discretionary. *Logan v. Dayton Hudson Corp.,* 865 F.2d 789, 790 (6th Cir. 1989). Young's perjury allegations merely repeat arguments made at trial, where he had a full and fair opportunity to test plaintiffs' credibility. If these allegations rest to any extent upon evidence not presented at trial, Young fails to show that the evidence was unavailable to him at trial. *See Emmons v. McLauglin,* 874 F.2d 351, 358 (6th Cir.1989). Young waived his right to a jury trial by failing to make a timely jury demand. Fed.R.Civ.P. 38(d).

■ Young's financial status does not affect his liability, as the federal statutes at issue do not exempt impecunious or embarrassed employers from the obligations discussed in the court's conclusions of law.

On the question of damages, the court has already taken Young's situation into account. To the degree Young's modest means reflect his lack of sophistication and thus his good faith, the court has declined to award plaintiffs liquidated Fair Labor Standards Act damages under the mitigation provision of the Portal–to–Portal Act, 29 U.S.C. § 260. Similarly, the court explicitly considered Young's ability to pay in setting his statutory damages under the Migrant and Seasonal Agricultural Worker Protection Act at the relatively low level of $75 per violation.

Young has never claimed that he is indigent. He has never asked the court to appoint a lawyer for him. In fact, he insisted on representing himself at trial despite strong warning from the court about the risks of proceeding without competent counsel. In any event, he makes no showing that retrial of this matter, even with the help of an attorney, will in any way change the "mire of legalities" contained in the court's findings of fact and conclusions of law. As for the expense of appeal, the court stands ready to authorize an *in forma pauperis* appeal should Young qualify for one under 28 U.S.C. § 1915.

In light of the foregoing, the court in its discretion denies Young's motion for new trial. The court has considered the untimely opposition contained in the motion to plaintiffs' petitions for prejudgment interest, costs, and attorneys' fees. Because Young's objections lack merit, the order and judgment regarding those matters will stand unaltered.

IT IS SO ORDERED.

## ON POST–TRIAL MOTIONS

Defendant William G. Young has filed, under Fed.R.Civ.P. 59(a)(2), his second motion for new trial. He also seeks, under Rule 52(b), amendment of the court's findings of fact and conclusions of law, and under Rule 60(b), relief from the court's July 24, 1989 final judgment. Along with these motions Young has also submitted the affidavit of David Francis. The affidavit's caption refers to Rule 62. However, the court will not address a Rule 62 issue, because Young's motions do not discuss or request any stay of proceedings to enforce the judgment.

Young's Rule 52(b) motion does not identify the findings of fact and conclusions of law he wishes the court to amend. Rather, the motion improperly seeks to retry the case as a whole. "A party who failed to prove his strongest case is not entitled to a second opportunity by moving to amend a finding of fact and a conclusion of law." 9 C. Wright, A. Miller & F. Elliott, *Federal Practice and Procedure* § 2852 (1971 & Supp.1989) (collecting cases).

The court doubts that the law obligates attention to Young's second motion for new trial. As a general rule, a successive Rule 59 motion is "ineffectual." *York v. Tate*, 858 F.2d 322, 326 (6th Cir.1988) (per curiam), *cert. denied*, —— U.S. ——, 109 S.Ct. 1960, 104 L.Ed.2d 428 (1989) (quoting *Charles v. Daley*, 799 F.2d 343, 348 (7th Cir.1986)). Nevertheless, because Young levels serious accusations against its impartiality, the court will address the motion.

■■■ At the outset, no doubt exists that judicial misconduct may serve as a ground for granting a motion for new trial. *Lutz v. Commissioner of Internal Revenue*, 593 F.2d 45, 45–46 (6th Cir.1979). Misconduct may consist of actual bias or hostility on the trial judge's part, or creation by the judge of an appearance of bias or hostility. *Anderson v. Sheppard*, 856 F.2d 741, 745–47 (6th Cir.1988).

Here, Young charges the court with actual bias based upon two specific incidents: an alleged *ex parte* pretrial contact with plaintiff's attorney, and an inquiry by the court to Young regarding Young's choice to represent himself without assistance of counsel. Additionally, Young asserts that the court created a prejudicial trial atmosphere by mischaracterizing plaintiffs' claims, by "not allowing Defendant (pro se) any continuity by break-ups [sic], interruptions, repeated recesses, and objections," by not allowing unlimited cross-examination of plaintiff Jesus Colunga, by not allowing Young to "present his side of the story," and by adjourning trial without allowing Young to complete his case.

The court does not have the benefit of a complete trial transcript, but it has taken the trouble to transcribe a representative portion of Young's closing argument containing the inquiry regarding Young's *pro se* status. In addition, the court has thoroughly reviewed its case notes for at least the third time, and has conscientiously attempted to recall the events complained of by Young.

■ As for the allegations of actual bias, the court cannot find any notes regarding the supposed *ex parte* contact, and it remembers no such event. Young never raised or even mentioned this issue until he filed his second motion for new trial. The court is not required to accept Young's naked assertion that the alleged contact occurred. *Cf. Rodriques v. Ripley Industries, Inc.*, 507 F.2d 782, 787 (1st Cir.1974) (trial court did not abuse its discretion in refusing to grant new trial based upon judge's alleged prejudicial comment where, among other things, no evidence other than plaintiff's naked assertion that jury overheard the comment).

■ The transcript excerpt from Young's closing statement shows that the court did comment that Young, an established businessman, had a "supreme ego" to think he could try this complicated case himself without a lawyer. The comment undoubtedly reflected the court's irritation at Young's obvious inability to present his case in an effective or even coherent way. In retrospect, it perhaps should not have been made. Nevertheless, as the following colloquy demonstrates, the "supreme ego" statement does not in fact reflect any judicial bias or hostility against Young, and thus does not suffice to grant Young a new trial:

MR. YOUNG: I don't quite know where I'm at. I've been accused of so many things, I—and a lot of them are lies, just outright lies, that I don't know that I could defend myself against the position that—or, the possible damages that I might incur from the results from the findings of this Court.

THE COURT: Let me ask you this, while we're on that subject, just as a matter of interest. This is, as you've discover-

ed, this is a complicated field of law. It's a relatively new field of law. It's changing all the time. There are a variety of different statutes that are involved. It's very possible that somebody might be a farmer for one statute, a nonfarmer for another statute. Why is it, Mr. Young, that you felt that you could weave your way through these statutes and understand the claims that have been made and know how to defend yourself without hiring yourself a lawyer, why did you decide to do that?

I'm not penalizing you for it, but I'm just—as a matter of interest, somebody who is bright and in business, a matter of some importance to you, you get involved in a federal court case.

MR. YOUNG: Umm, boy.

THE COURT: I'm absolutely at a loss to understand why you had, if you'll excuse the expression, "such a supreme ego" to think that—

MR. YOUNG: That's not it.

THE COURT: —to think that you could handle this all yourself?

MR. YOUNG: That's not it, Your Honor.

THE COURT: Well, what was it then—

MR. YOUNG: I, if I have any ego, it has to do with whether or not—and I thought that you could prove a lie wrong. I have been told, by my wife, for instance, that "You're crazy. You can't prove a lie. There's no way. If somebody lies against you"—

THE COURT: That's not true at all.

MR. YOUNG: I believe it, I do believe it right now.

. . . .

THE COURT: Let me just interrupt. As I told you before, I'm certainly in no way holding it against you because you don't have a lawyer.

MR. YOUNG: I feel as though I've been whipped a few times up here just trying to defend myself.

THE COURT: Well, the problem is that, because you're not familiar, you don't know how to defend yourself. You don't know what evidence to put in, you don't know what testimony to give. If in fact the plaintiffs' claims

are lies, you don't know how to go about establishing that they're lies. And that's why it's frustrating for the Court as well as it is for you—

MR. YOUNG: I understand.

THE COURT: —because I understand what it is you want to do, but because you're not a lawyer and you don't know how to go about it, it just seems to me you've been kind of wandering around in a haze; and that's what makes it frustrating for the Court, because I want to do what is right, and I want to come out with the correct and fair answer in this case. But the Court relies, in every case, relies heavily on the lawyers' expertise on both sides, even though they are in bitter disagreement with each other. I rely on them, I rely on the cases they cite to me. And if a witness is lying, the other lawyer, when he gets up, very often establishes that, through his skill and his training. That's what he goes to law school for. He demonstrates that that particular witness is not telling the truth.

So I—it's frustrating to the Court to try to find out what the facts are here when so many of the things you want to say—and I don't blame you for wanting to say them, but at the point, at least, when you want to say them, is inappropriate.

Now, having said that, let's move on and let me hear what you—let me hear what you—why don't you just summarize for me what your position is in this case and what you want the Court to do. Just lay it out on the line for me.

The "supreme ego" statement was an isolated, momentary event occurring in the context of a frustrating four-day trial. As the First Circuit has noted, in assessing claims of judicial misconduct "it is necessary to consider isolated incidents in light of the entire [trial] so as to 'guard against magnification ... of instances which were of little importance in their setting.'" *Aggarwal v. Ponce School of Medicine*, 837 F.2d 17, 22 (1st Cir.1988) (quoting *Glasser v. United States*, 315 U.S. 60, 83, 62 S.Ct. 457, 471, 86 L.Ed. 680 (1942)).

Viewing the trial as a whole, the "supreme ego" comment taken in context had absolutely no bearing on the outcome of the case. The court did not personally belittle Young or his case, nor did the court become an advocate for plaintiffs' case. Certainly the court never subjected Young to the sort of improper badgering inflicted by the trial judge upon the *pro se* plaintiff in *Anderson*. *See* 856 F.2d at 742–45. Rather, the court's actions and demeanor were, in the main, "calmly judicial, dispassionate, and impartial." *Anderson*, 856 F.2d at 745. As the quoted trial excerpt shows, any personal irritation exhibited by the court did not alter the court's stated purpose on the record to "come out with the correct and fair answer in this case." *See Westminster Electric Corp. v. Salem Engineering and Construction*, 712 F.2d 720, 722–23 (1st Cir.1983). Moreover, as further evidence of the court's attitude toward Young and his trial performance, the following appears in the excerpt of closing argument:

THE COURT: Well, for all my critical comments, it does seem to me, though, you certainly did as well as any non-lawyer could have done....

MR. YOUNG: Well, you know, Your Honor, there's an old saying, and I don't mean to get too jolly, but "the only compliment to a salesman, is sales." And I've tried my best to tell what happened.

THE COURT: Okay, I'm sure you have. All right. Fine.

Turning to Young's claim that the court created an appearance of hostility or bias by its management of the trial, many of the matters complained of are plainly within the trial judge's discretionary authority to run his or her courtroom. At one confusing point in the trial the court did incompletely characterize plaintiffs' claims as resting upon breach of contract. Again, however, the court's comments as a whole cannot be interpreted as unfairly misleading Young into slackening his efforts to defend against plaintiffs' federal statutory claims. The quoted trial excerpt, for example, shows that the court told Young "this is a complicated field of law ... [with] a variety of statutes involved."

Young enjoyed more than ample opportunity to present his case and to cross-examine plaintiffs' witnesses. During trial

Young did not object to hindrance by the court in his presentation of evidence or conduct of cross-examination. That he did not try his case effectively cannot be attributed to any asserted bias or hostility on the part of the court. As for the adjournment issue, the closing argument excerpt reflects the following:

THE COURT: Mr. Young, anything further that you want to say? Do you feel you've got all your exhibits in and everything you wanted to say? ... All right. Anything else you want to say?

MR. YOUNG: I don't think so.

THE COURT: Do you think you got in everything you wanted to get in?

MR. YOUNG: No. It's too complicated for me.

THE COURT: Well—

MR. YOUNG: But I appreciate the lesson that I've learned.... Thank you, Your Honor.

In sum, review of the trial management issues raised by Young satisfies the court that Young enjoyed a fair trial in a fair tribunal that preserved both the reality and the appearance of fairness. *See Anderson,* 856 F.2d at 745, 746.

 Young's second motion for new trial presumably also rests upon the assertion of the additional evidence contained in the David Francis affidavit. In some circumstances, the discovery of new evidence may warrant a new trial under Rule 59. *See, e.g., Morvay v. Maghielse Tool and Die Co., Inc.,* 708 F.2d 229, 233 (6th Cir.), *cert. denied,* 464 U.S. 1011, 104 S.Ct. 534 (1983). Those circumstances are not present here. Young does not assert that the Francis evidence is "newly discovered." Nor does he assert that at the time of trial he was excusably ignorant of the facts contained in the Francis affidavit, that he used due diligence to learn about them, that the additional facts do not merely affect the weight and credibility of evidence previously adduced, or that they would probably change the court's adverse decision. *See generally* 11 C. Wright, A. Miller & F. Elliott, *Federal Practice and Procedure* § 2808 (1973 & Supp.1989) (collecting cases).

Young does not specify the subsections upon which his Rule 60(b) motion relies. The only conceivably applicable provisions are Rule 60(b)(2) and Rule 60(b)(4), which address relief from judgment based respectively upon newly discovered evidence and voidness of the judgment. The standards governing review of a Rule 60(b)(2) motion mirror those applied to motions under Rule 59 for new trial based upon newly discovered evidence. *Ursini v. Menninger Foundation,* 384 F.Supp. 158, 162–63 (E.D.Cal. 1974). Accordingly, for the reasons discussed in connection with his second Rule 59 motion, the Francis affidavit does not entitle Young to Rule 60(b)(2) relief.

An unconstitutionally rendered judgment is void within the meaning of Rule 60(b)(4). *See Matter of Park Nursing Center, Inc.,* 766 F.2d 261, 264 (6th Cir.1985) (citing *Textile Banking Co. Inc. v. Rentschler,* 657 F.2d 844 (7th Cir.1981)). Here, Young alleges that the court's prejudice and bias impermissibly abridged his due process right to a fair trial. The previous discussion of these issues suffices to show that Young was afforded due process. His Rule 60(b)(4) motion therefore lacks merit.

In light of the foregoing, Young has not satisfied the court that failure to grant his post-trial motions is inconsistent with substantial justice. *See Dorsey v. City of Detroit,* 858 F.2d 338, 344 (6th Cir.1988) (motion for new trial). Consequently, IT IS ORDERED that Young's Rule 52(b), Rule 60(b), and second Rule 59 motions are denied.