706 F.2d 181
 113 L.R.R.M. (BNA) 2493, 97 Lab.Cas. P 10,099
 Gregory POOLE, Plaintiff-Appellant,
v.
The BUDD COMPANY, a Pennsylvania corporation, International
Union, United Auto Workers (UAW), Local Union 306,
UAW, jointly and severally, Defendants-Appellees.
 No. 81-1654.
 United States Court of Appeals,
Sixth Circuit.
 Argued March 22, 1983.
Decided May 10, 1983.
 
 Joseph A. Golden (argued), Keller, Katkowsky & Golden, Southfield, Mich., for plaintiff-appellant.
 Donald A. Van Suilichem, Laurence A. Scoville, Jr. (argued), Clark, Klein & Beaumont, Detroit, Mich., for the Budd Co.
 Nancy Schiffer (argued), Bruce A. Miller, Miller, Cohen, Martens, Sugerman, Detroit, Mich., for U.A.W.
 Before KENNEDY, MARTIN and NIES,* Circuit Judges.
 CORNELIA G. KENNEDY, Circuit Judge.
 
 
 1
 Gregory Poole appeals from the District Court's grant of summary judgment in favor of the defendants, the Budd Company and United Auto Workers Local 306 (UAW). The District Court denied Poole's claims of wrongful discharge brought under Sec. 301(a) of the Labor-Management Relations Act, 29 U.S.C. Sec. 185(a) (1976) because while the union had declined to proceed with the arbitration step of the grievance procedures contained in the parties' collective bargaining agreement, Poole had not shown any breach of the union's duty of fair representation. Because we find there is no material issue of fact and fully agree with the District Court's finding that union adequately met its duty of fair representation, we affirm.
 
 
 2
 On June 29, 1978 the Budd Company (Budd) fired Gregory Poole for refusing to accept a job assignment given to him by his foreman. Mr. Poole had been working that day on the "acid bath," a job which required Poole and a partner to remove doors, designed for the two-door Lincoln Mark V model, from the assembly line and soak them in a tub of acid. After the doors soaked for a few minutes the workers would then scrub off any rust. This scrubbing process, each person working independently, takes around twelve minutes. After he and his partner had placed two doors into the bath to soak, Poole stopped work and leaned against the tub while his partner used the restroom. When Poole's foreman questioned him about standing idle, Poole explained that he was waiting for his partner to return before resuming work. The foreman ordered Poole to continue working in his partner's absence. Poole refused maintaining that the job was a two-person operation and demanded to see a steward if the foreman persisted. After an unsuccessful search for the steward, the foreman returned and fired Poole. The union filed a grievance on Poole's behalf and began its investigation through Chief Steward Claude Strickland. Strickland, who was already familiar with the acid bath operation, visited the job site and interviewed Poole's co-workers. He also weighed the door that was involved. Strickland then turned the investigation over to Committeeman Wilbert who also visited the job site, spoke with workers and negotiated with the company informally. Wilbert discovered, contrary to the initial information gathered by Strickland, that Poole's job was sometimes done by one worker alone. In particular, a Mr. Black had done the job on his own. In doing so, Mr. Black had also injured himself at one point by dropping a door on his foot. Wilbert also found that workers often were required to lift parts of between 40 and 70 pounds in other job functions. From the Budd records Wilbert erroneously concluded that the part Poole had been working on weighed 35 pounds. The part actually weighed 60 pounds. Wilbert, in accordance with the collective bargaining agreement, took Poole's grievance directly to the fourth stage of the grievance process arguing that the job was in practice a two-person operation and that it would have been unsafe for Poole to lift the doors back on to the line by himself. His argument was unsuccessful. At stage five of the grievance procedure the union president, Mr. Tunesi, presented the same arguments to no avail. The UAW asserts that it reopened the grievance several times after this denial before finally deciding to allow the grievance to lapse in November of 1978. Poole asserts that he was misinformed of the status of his grievance until July or August 1979.
 
 
 3
 The parties raise three issues on appeal: (1) whether there exists any material issue of fact as to Poole's claim that the UAW violated its duty of fair representation; (2) whether Poole's failure to exhaust his intra-union appeal procedures bars his Sec. 301(a) claims; and, (3) whether this Circuit's decision in Badon v. General Motors Corp., 679 F.2d 93 (6th Cir.1982), which applied Michigan's six-month statute of limitations to Sec. 301(a) claims arising under collective bargaining agreements in Michigan, should be applied retroactively to the present litigation.
 
 
 4
 It is axiomatic that an aggrieved employee must exhaust any exclusive grievance and arbitration procedure created in a collective bargaining agreement prior to bringing a Sec. 301(a) suit against the employer. Republic Steel Corp. v. Maddox, 379 U.S. 650, 652-53, 85 S.Ct. 614, 616, 13 L.Ed.2d 580 (1965); Vaca v. Sipes, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). A failure to exhaust may be excused, however, if the employee establishes that the union breached its duty of fair representation in the processing of the grievance. Vaca, 386 U.S. at 186, 190, 87 S.Ct. at 914, 916. A breach of this duty occurs "only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory or in bad faith." Id. at 190, 87 S.Ct. at 916. A union's conduct may be sufficiently arbitrary to establish a breach of its duty to fairly represent its members when it handles a grievance in a "perfunctory" manner, with caprice or without rational explanation. See id. at 194, 87 S.Ct. at 918; Ruzicka v. General Motors Corp., 649 F.2d 1207, 1211 n. 3, 1212 (6th Cir.1981); Farmer v. ARA Services, Inc., 660 F.2d 1096 (6th Cir.1981). The employee need not necessarily show bad faith, yet mere negligence or mistaken judgment is insufficient to establish a breach of the union's duty. See Whitten v. Anchor Motor Freight, 521 F.2d 1335, 1341 (6th Cir.), cert. denied, 425 U.S. 981, 96 S.Ct. 2188, 48 L.Ed.2d 807 (1976); Dill v. Greyhound Corp., 435 F.2d 231, 238 (6th Cir.1970), cert. denied, 402 U.S. 952, 91 S.Ct. 1622, 29 L.Ed.2d 122 (1971); Ruzicka v. General Motors Corp., 523 F.2d 306, 310-11 (6th Cir.1975) (Ruzicka I ).
 
 
 5
 In the present case the local UAW union did conduct an adequate investigation and quite clearly pressed the Budd Company to reinstate the appellant Poole. The union successfully reopened the grievance several times and argued the most persuasive points available in Poole's favor. These were, first, that Poole was justified for refusing to resume work without his partner because the job was, in practice, a two-person operation, and second, that the job was unsafe when done alone. Only after fully, yet unsuccessfully, pressing Poole's claims directly with the company, did the union decide that the grievance was not sufficiently meritorious to warrant arbitration. The union believed that the grievance was unsuitable for arbitration because (1) it was unlikely that it could show a practice of utilizing two instead of one worker on Poole's job function; (2) the safety argument was without solid evidentiary support;[1] and (3) in light of Poole's past disciplinary record the punishment of discharge would be seen as entirely appropriate by an arbitrator even for a technical violation of work rules.[2] Poole argues that the union violated its duty of fair representation by arbitrarily misreading and negligently communicating (among the union representatives) information concerning the job and the dangers associated with it when done as a one-worker operation. He also asserts that the union, in reckless disregard of his rights, misunderstood and misapplied the legal standards regarding the burden of proof in evaluating whether to take his grievance to arbitration. Poole's first argument is flawed for two reasons. First, regardless what the initial investigator Strickland had told other union representatives, those representatives did their own independent investigations and had a reasonable basis for their evaluation that the two-person job defense could not be established. Second, even if union representatives were in error in their judgment that this prerequisite "past practice" could not be established in face of evidence to the contrary, that error would at most be negligence. Mere negligence is insufficient to establish a breach of the duty of fair representation. See, e.g., Ruzicka I, 523 F.2d at 310-11; Whitten, 521 F.2d at 1341. See also Vaca, 386 U.S. at 190-93, 87 S.Ct. at 916-18. It is true that gross mistake or inaction which has no rational explanation may constitute a breach of the duty of fair representation. See Williams v. Teamsters Loc. Union, No. 984, 625 F.2d 138 (6th Cir.1980) (per curiam) (union's conduct found to be arbitrary apparently because there was no rational explanation for its refusal to process the employee's grievance); Milstead v. International Brotherhood of Teamsters, Local 957, 580 F.2d 232, 235 (6th Cir.1978) (inept handling of grievance due to gross ignorance of the collective bargaining agreement may be a breach of the duty of fair representation); Ruzicka I, 523 F.2d at 309-11 (inexplicable neglect in processing a grievance unrelated to its merits was both arbitrary and perfunctory); Balowski v. International Union, UAW, AFL-CIO, 372 F.2d 829, 834 (6th Cir.1967) (gross mistake or inaction implies bad faith). In the present case, however, the union clearly had a rational basis for making its decision not to press on with Poole's grievance. There was strong evidence that the job had often been done by one person and there was only one relatively minor safety incident attributable to the job as a one-worker operation. More importantly, however, while the foreman's exact instructions to Poole are disputed, it is undisputed that Poole could have resumed work on an individual basis for at least 12 minutes without having to engage in the asserted two-person aspect of the job, that is, lifting the door from the acid bath. Whether the union's judgment was flawed or not, it is clear that it fairly and in good faith undertook to represent Mr. Poole with Budd and worked diligently toward gaining his reinstatement. The grievance process is not expected to be error free and the courts should hesitate to interfere with legitimate internal union decisions which fairly evaluate whether a claim warrants resort to the arbitral machinery. See Hines v. Anchor Motor Freight, Inc., 424 U.S. 554, 571, 96 S.Ct. 1048, 1059, 47 L.Ed.2d 231 (1976); Vaca, 386 U.S. at 192-93, 87 S.Ct. at 917-18.
 
 
 6
 Poole's second argument that the union breached its duty of fair representation is that the union revealed a lack of understanding as to the relevant burden of proof when it asserted as a reason for dropping Poole's grievance that it could not establish that the job was, in practice, a two-person job.
 
 
 7
 This argument is unpersuasive. It is difficult to infer from the union representative's casual recital of the reasons for choosing not to pursue Poole's grievance, that the union actually misunderstood the relevant burdens of proof. While it was Budd's burden to show just cause for the discharge, there was sufficient evidence of the job being done by one person for the company to easily meet this burden. Unrebutted, this evidence would surely have been sufficient to support a finding of just cause. Thus, the union would necessarily be forced to 'establish' the practice defense. The job had not been negotiated as a two-person job.
 
 
 8
 Even if the union representatives misunderstood the burden of proof, it would not have constituted a breach of the duty of fair representation under the circumstances in this case. Union representatives are not to be strictly held to the standards of attorneys. See Harris v. Schwerman Trucking Co., 668 F.2d 1204, 1206 (11th Cir.1982). Mere negligent misunderstanding of a legal standard, such as that alleged in this case, does not constitute the arbitrariness or reckless disregard required to establish a breach to the duty of fair representation.[3] See Ruzicka, 649 F.2d at 1212; Ruzicka I, 523 F.2d at 310; Baker v. Amstead Industries, Inc., 656 F.2d 1245, 1252 (7th Cir.1981), cert. denied, 456 U.S. 945, 102 S.Ct. 2011, 72 L.Ed.2d 468. See also Ruzicka I, 523 F.2d at 316 (McCree, J., concurring); Curtis v. United Transportation Union, 700 F.2d 457, 458 (8th Cir.1983); Findley v. Jones Motor Freight, 639 F. 953, 961 (3d Cir.1981).
 
 
 9
 The defendant Budd asserts two additional grounds for affirmance: failure to exhaust intra-union appeals procedures and the statute of limitations. Because we find that the District Court was correct in its determination that there was no breach of the duty of fair representation, it is unnecessary to reach these additional issues. Appellant concedes that, absent such a breach, any claim against Budd is precluded.
 
 
 10
 The judgment of the District Court is AFFIRMED.
 
 
 
 *
 Honorable Helen W. Nies, United States Court of Appeals for the Federal Circuit, sitting by designation
 
 
 [1]
 To be sufficiently 'unsafe' to warrant a work stoppage under the present collective bargaining agreement the work apparently must be abnormally dangerous to life and limb
 
 
 [2]
 Poole had been discharged on three previous occasions, the last time being reinstated on condition that it was his "last chance."
 
 
 [3]
 The facts of this case do not present the question of whether gross negligence by a union in its understanding and application of legal standards constitutes a breach of the duty of fair representation