816 F.2d 682
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 Norman L. SPADE and Judith Spade, husband and wife,
Plaintiffs-Appellants,
v.
GENERAL TELEPHONE COMPANY OF MICHIGAN, and Local 1106
International Brotherhood of Electrical Workers,
Defendants-Appellees.
 
 No. 86-1491.
 United States Court of Appeals, Sixth Circuit.
 April 14, 1987.
 Before MERRITT and MILBURN, Circuit Judges, and PECK, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Appellant Norman Spade was terminated by his employer General Telephone Company of Michigan for unexcused absence after he failed to provide sufficient documentation to confirm his alleged medical disability. Spade and his wife then instituted an action under Sec. 301 of the Labor Mangement Relations Act, 29 U.S.C. Sec. 185, against General Telephone for wrongful discharge and breach of contract, and against Local 1106, International Brotherhood of Electrical Workers, alleging breach of its duty of fair representation. The sole issue on appeal is whether the district court erred in granting summary judgment for Local 1106. Because we agree that Spade raised no genuine issues of material fact regarding his allegation of unfair representation, we affirm the judgment of the district court.
 
 I.
 
 2
 Spade was employed by General Telephone as an installer/repair person from 1978 until his discharge on October 26, 1984. He was also a member of Local 1106. On June 18, 1984, Spade injured his back in a non-work related incident. He was hospitalized from June 19, 1984 to July 3, 1984, under the care of his treating physician, Dr. Park. Dr. Park disabled Spade from work following his release from the hospital.
 
 
 3
 Under the terms of Local 1106's collective bargaining agreement with General Telephone, payment of company accident and sickness benefits was contingent upon General Telephone's receipt of a "satisfactorily completed [physician's] certificate" describing the nature of the medical problem. Set forth on the face of the physician's certificate was the company policy that "significant clarification" would be needed to justify extended disability in cases in which diagnosis was "simple back strain ... and other similar conditions." Dr. Park submitted physician's certificates citing back strain as the cause of disability and Spade received benefits until October 1, 1984.
 
 
 4
 On October 16, 1984, General Telephone met with Spade to discuss his alleged continuing disability. Aware of the situation Camille Rudicil, the Assistant Business Manager of Local 1106, assigned Debra Carroll, a union steward, to attend the meeting. At the meeting Spade's supervisor, Floyd Dopp, told Spade that his physician's certificate did not contain information sufficient to justify his lengthy absence from work. Dopp also noted that Spade had not followed the recommendation of Dr. Russo, a neurologist whom Spade had seen in September 1984, to see an orthopedist. At the meeting's end, Dopp gave Spade a letter which indicated that Spade would be viewed as absent without excuse unless he provided "documented evidence of physical reasons for absence from work" and unless he saw an orthopedist. Spade was given eight working days in which to comply or face termination. Spade then delivered to General Telephone a letter from Dr. Park who indicated that Spade had "back problems" and that he did not believe that Spade needed to see an orthopedist. General Telephone told Spade that this diagnosis was insufficient to continue benefits.
 
 
 5
 At that point Local 1106 representatives were actively representing Spade. On October 17, 1984, at the Union's request Spade signed a release authorizing Rudicil to obtain his medical records; Carroll asked Spade for copies of any material he received from Dr. Park. On October 19, 1984, Rudicil wrote Dr. Park requesting that he provide a complete diagnostic evaluation and prognosis for Spade. Although General Telephone terminated Spade for unexcused absence on October 26, 1984, Rudicil persuaded General Telephone to hold Spade's termination in abeyance pending receipt of a response to her letter from Dr. Park. When Dr. Park responded on October 31, 1984, that Spade had "muscular problems," General Telephone deemed this insufficient documentation to prevent Spade's termination.
 
 
 6
 Local 1106 filed a grievance on Spade's behalf on November 2, 1984, which General Telephone denied November 8, 1984. The grievance was pursued unsuccessfully through two more steps pursuant to the terms of the collective bargaining agreement. On January 31, 1985, Rudicil sent Spade a letter requesting that he provide additional information on his medical condition; on February 1, 1985, she informed Dr. Park that Spade had been terminated. On February 8, 1985, having heard from neither Spade nor Dr. Park, Rudicil decided to withdraw the grievance. She stated in her affidavit that her decision to withdraw Spade's grievance was based on Dr. Park's failure to provide an objective diagnosis of Spade's back problem, and her belief that an arbitrator would agree with General Telephone that Dr. Park's earlier statements of "back strain" or "muscular problems" were not a satisfactory explanation for Spade's absence and would uphold his termination. Rudicil sent the withdrawal notice to General Telephone on February 11, 1985. She included with it a letter she received that day from Dr. Park, which did not contain the evidence needed by General Telephone, but which she hoped might nonetheless favorably influence the company. The Spades filed suit on March 27, 1985.
 
 II.
 
 7
 Under Rule 56(c) of the Federal Rules of Civil Procedure, the party moving for summary judgment has the burden of showing "that there is no genuine issue as to any material fact." The evidence should be viewed in a light most favorable to the opposing party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 153-57 (1970). In the face of a properly supported motion, under Rule 56(e) the nonmovant may not rest on its pleadings, but by affidavits or by depositions, answers to interrogatories, and admissions on file, must designate "specific facts showing that there is a genuine issue for trial" in order to avoid entry of summary judgment in the movant's favor. Celotex Corp. v. Catrett, 106 S.Ct. 2548, 2553 (1986). Because the facts in this case are undisputed, the issue then is whether the facts viewed in a light most favorable to Spade can state a claim for unfair representation.
 
 
 8
 The law regarding a union's duty of fair representation is well established: "[a] breach of the statutory duty of fair representation occurs only when the union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." Vaca v. Sipes, 386 U.S. 171, 190 (1967). A union's conduct may be arbitrary if in handling a grievance it acts perfunctorily, capriciously, or without a rational explanation. Poole v. Budd Co., 706 F.2d 181, 183 (6th Cir.1983). Mere negligence in handling a grievance is insufficient to establish a breach of the duty. Id. at 184. Neither is the fact that the grievance might ultimately have proven meritorious. Vaca, 386 U.S. at 192-93. In sum, if the union has a rational basis for not pursuing a grievance, it has not breached its duty. Poole, 706 F.2d at 184; Ruzicka v. General Motors Corp. (Ruzicka II), 649 F.2d 1207, 1212 (6th Cir.1981).
 
 
 9
 The undisputed facts in this case show that Local 1106 vigorously represented Spade's interests through the first three steps of the grievance procedure. Rudicil repeatedly sought further medical confirmation from Dr. Park of Spade's alleged continuing disability and interceded on Spade's behalf to hold his scheduled termination in abeyance pending receipt of further data. Only when her efforts to obtain the information were fruitless did Rudicil decide to withdraw the grievance. As stated in Rudicil's affidavit, Local 1106 believed that without more specific documentation it would lose the arbitration; this was a rational basis for withdrawing the grievance. Moreover, in his deposition Spade admitted that he had no knowledge of facts or reason to believe that Rudicil dropped his grievance for any reason other than this.
 
 
 10
 Despite the foregoing, Spade argues that Local 1106 unfairly represented him when it refused to "listen to" his theory that General Telephone could only withhold sickness benefits, but not terminate him consistent with the just cause standard in the bargaining agreement, for his failure to submit satisfactory physician's certificates. Spade's argument is misguided. A union member does not have an absolute right to pursue his grievance to arbitration, Vaca, 386 U.S. at 191, nor does he have a right to force his theory of the grievance upon the union.
 
 
 11
 Just as a union must be free to sift out wholly frivolous grievances which would only clog the grievance process, so it must be free to take a position on the not so frivolous disputes .... To remove or gag the union in these cases would surely weaken the collective bargaining and grievance process.
 
 
 12
 Humphrey v. Moore, 375 U.S. 335, 349-50 (1964) (cited with approval in Vaca, 386 U.S. at 194).
 
 
 13
 We agree with the district court that Spade failed to produce any evidence that Local 1106 handled his grievance arbitrarily, discriminatorily, or in bad faith. Because it is well established that a union member cannot recover against his former employer in a Sec. 301 action unless he has first established that the union breached its duty of fair representation, see Hines v. Anchor Motor Freight, Inc., 424 U.S. 554, 570-71 (1976), our decision that the district court properly granted summary judgment for Local 1106 also disposes of Spade's Sec. 301 wrongful discharge claim against General Telephone.
 
 
 14
 AFFIRMED.