Charles D. KINCADE, Plaintiff,

v.

CARGILL, INC., and American Federation of Grain Millers, Defendants.

No. 88-4131-S.

United States District Court, D. Kansas.

Feb. 26, 1990.

Vernon L. Jarboe and Randall J. Forbes, Frieden & Forbes, Topeka, Kan., for plaintiff.

Arthur E. Palmer, Goodell, Stratton, Edmonds & Palmer, Topeka, Kan., for Cargill, Inc.

Michael J. Stapp, Blake & Uhlig, P.A., Kansas City, Kan., and Mark L. Heinen, Gregory, Moore, Jeakle & Heinen, Detroit, Mich., for American Federation of Grain Millers.

## MEMORANDUM AND ORDER

SAFFELS, District Judge.

This matter is before the court on the summary judgment motions of defendants, Cargill, Inc. (Cargill) and the American Federation of Grain Millers (AFGM). In this case, plaintiff Charles Kincade (Kincade) alleges that his discharge from employment with Cargill constitutes wrongful termination, retaliatory discharge and a violation of the collective bargaining agreement between Cargill and the union. He also alleges that his union, the AFGM, breached its duty of fair representation in connection with his discharge from Cargill by refusing to seek arbitration of his grievance.

A moving party is entitled to summary judgment only when the evidence indicates that no genuine issue of material fact exists. Fed.R.Civ.P. 56(c); *Maughan v. SW Servicing, Inc.*, 758 F.2d 1381, 1387 (10th Cir.1985). The requirement of a genuine issue of fact means that the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The moving party has the burden of showing the absence of a genuine issue of material fact. This burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). "[A] party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256, 106 S.Ct. at 2514. Thus, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Id.* The court must consider factual inferences tending to show triable issues in the light most favorable to the party opposing the motion. *Bee v. Greaves*, 744 F.2d 1387, 1396 (10th Cir.1984), *cert. denied*, 469 U.S. 1214, 105 S.Ct. 1187, 84 L.Ed.2d 334 (1985).

The court finds that the following facts are not genuinely disputed. Charles Kincade began his employment with Cargill in 1979. Kincade was employed as a "packer," i.e., the employee charged with making sure that flour is properly loaded, including sewing the sacks containing the flour. On December 16, 1987, Kincade asked his supervisor, Mike Morris, whether anyone would have to stay late and work overtime that evening, to which Morris responded, at least in part, "whatever." Morris and Cargill maintain that what Morris said was 'whatever it takes to get the job done;' Morris and Cargill maintain that Morris gave Kincade a direct order to remain until the truck, which had an 8 a.m. deadline, was loaded, and that Kincade understood this. Kincade maintains that Morris said, "whatever you guys decide;" Kincade maintains that he was never directly ordered to stay at the job site until the truck was loaded.

On December 16, 1988, Kincade proceeded to load a truck with flour from 10:30 p.m. until 1 a.m. At approximately 1 a.m., approximately one hour after the end of his regular shift, Kincade left the truck filling with flour with the agreement that Curtis Bailey, a miller, would shut it down and take the equipment off. Although he consulted with the miller, Bailey, Kincade did not call his supervisor before leaving. Kincade was suspended and after investigation by Cargill, was terminated over this incident.

In this lawsuit, Kincade alleges that his termination for leaving the plant was pretextual, as Kincade contends that his discharge was really in retaliation for a workman's compensation claim he filed for a back injury. Kincade's belief that the discharge was because of his workman's compensation claim is based on two incidents. In one incident, an office manager at Cargill sent Kincade a note about three workers implying that the smartest man of the three was a union man who was sent home because of a worker's compensation claim. In the other incident, Kincade asserts that

his foreman insinuated that Kincade had a bad back and should not be given work.

On December 19, 1987, Kincade filed a grievance with regard to his termination from Cargill. Before the grievance was filed, there was a meeting between management and union vice-president, Steve Kurtz. Two days after the grievance was filed, a second-step grievance meeting upheld Kincade's termination. This meeting was attended by Alan Schmidt, management representative, Kincade and a union representative. Around January 8, 1988, a third-step meeting was held at which Steve Kurtz, Kincade and Alan Schmidt were again present. Finally, a fourth step meeting was held. This meeting was attended by Howard Roe, International Vice President of the AFGM; Steve Kurtz, Pete Negrete and Kincade for the local union; and three management persons, namely Mike Morris, Scott Montgomery and Alan Schmidt. At the fourth step meeting, Kincade said nothing to rebut Morris' version of the events leading to Kincade's discharge, i.e., that Kincade had been ordered to stay and work overtime if necessary to complete the loading of the truck. The miller, Curtis Bailey, was not called as a witness in any of the grievance meetings.

After the fourth-step meeting, on January 30, 1988, the executive board of the local union decided not to seek arbitration of Kincade's grievance contesting his termination from Cargill. Kincade received written notification of the local union's decision on February 3, 1988. On or about February 13, 1988, Kincade wrote a letter to Robert Willis, President of the International AFGM; Willis treated the letter as an appeal of the local union's decision not to arbitrate Kincade's grievance. On February 19, 1988, Willis sent Kincade a letter, notifying him that Howard Roe, Vice–President of the International AFGM, was being assigned to conduct an investigation of the local union's processing of Kincade's grievance. On or about February 23, 1988, Roe traveled to Topeka and carried out the investigation assigned by Willis, meeting with Negrete and Kurtz and separately with Kincade. On or about February 29,

1988, Willis received Roe's four-page investigation report concerning Kincade's appeal, as well as certain documents relating to the discharge case. Mr. Roe's report contained the following summary:

> To sum up the whole matter, it is fair to say that Local 57's officers did process Kincade's grievance in a timely manner ... He [Kincade] was fully and fairly represented at each step of the way. Local 57's officers feel it would be nearly impossible to win Kincade's grievance in arbitration. Local 57's officers feel that if Kincade had a good work record and if he had not served as a steward and contract committee member and he truly did not understand he was to perform the overtime work on the night of December 16, 1987, the Union would have had a better case to take to arbitration.... It is my opinion that Kincade was properly represented by the Union and that Local 57's Executive Board acted in good faith in denying his request for arbitration.

On or about March 1, 1988, Willis wrote to Kincade to notify him that the investigation of Kincade's grievance and the local union's processing thereof had been completed and that Willis found "no basis which would justify requiring your Local Union to process your grievance further." On June 13, 1988, Kincade filed this action in federal district court, alleging that his termination from Cargill was wrongful, discriminatory and retaliatory, as well as a violation of the collective bargaining agreement. Kincade also asserted a claim against the international union for breach of the duty of fair representation and alleged that the union's refusal to seek arbitration of his grievance resulted from a conspiracy between the union and Cargill.

*Kincade's breach of duty of fair representation claim*

 Under the duty of fair representation, a union's "statutory authority to represent all members of a designated unit includes a statutory obligation to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and

honesty, and to avoid arbitrary conduct." *Vaca v. Sipes,* 386 U.S. 171, 177, 87 S.Ct. 903, 910, 17 L.Ed.2d 842 (1967). A breach of the duty of fair representation occurs "only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." *Vaca,* 386 U.S. at 190, 87 S.Ct. at 917. It has been held that mere negligence or mistaken judgment on the part of a union is insufficient to establish a breach of the union's duty of fair representation. *See, e.g., Poole v. Budd Co.,* 706 F.2d 181, 185 (6th Cir.1983). Moreover, union representatives participating in a grievance procedure are not held to the advocacy standards of lawyers. *See Curtis v. United Transp. Union,* 700 F.2d 457, 458 (8th Cir. 1983). In discussing a union's duty of fair representation, it has been stated that:

> so long as a union exercises its discretion in good faith and with honesty or purpose, a 'wide range of reasonableness must be allowed.' ... Mere negligence, poor judgment or ineptitude are insufficient to establish a breach of the duty of fair representation.

*Id.* at 458 (quoting *National Labor Relations Bd. v. American Postal Workers Union,* 618 F.2d 1249, 1255 (8th Cir.1980)).

In the present case, Kincade has presented no evidence, and indeed no argument, to support his contention that the AFGM breached its duty of fair representation in connection with its investigation of his appeal of the local union's refusal to arbitrate his grievance. In fact, the undisputed facts show that the AFGM responded to Kincade's appeal, investigated, and ultimately decided not to force arbitration of Kincade's grievance. The only basis for Kincade's breach of duty of fair representation claim is that the local union did not present the testimony of the miller on duty on December 16, 1987, i.e., Curtis Bailey, and that the local union executive board ultimately did not seek to arbitrate Kincade's grievance.

■ The court finds, however, that neither of these undisputed facts alone is sufficient to create a triable issue on the breach of duty question. First, the court finds that the fact that Bailey was not presented as a witness in any of the four step meetings constitutes negligence, *at best;* the most essential witness for the plaintiff, i.e., Kincade himself, was present at all of the meetings and did not rebut supervisor Morris' version of events at the critical fourth step meeting. Further, even if the local union's failure to present Bailey as a witness were to be construed as negligent, negligence alone is insufficient to support a breach of duty of fair representation claim. *See Poole,* 706 F.2d at 175.

■ Second, Kincade has presented no evidence to support his claim that the local's refusal to seek arbitration of his grievance was arbitrary. The local union executive board did give reasons in support of its decision not to seek arbitration. Specifically, the local union president, Pete Negrete, testified in his deposition that the local union executive board decided not to seek arbitration of Kincade's grievance because they did not believe that the union would prevail in arbitration since local union officials believed that Kincade knew he had been ordered to remain at work until the truck was loaded, based in part on Kincade's failure to respond to supervisor Morris' version of events at the fourth step meeting. Plaintiff has not challenged the local union's reasons for refusing to seek arbitration as pretextual. Nor has plaintiff come forward with any evidence that the decision was made in bad faith or in an arbitrary or discriminatory manner. *See Vaca,* 386 U.S. at 190, 87 S.Ct. at 916. Thus, since the court finds that plaintiff has failed to create a triable issue concerning his claim against the union for breach of the duty of fair representation, the court will grant defendant AFGM's motion for summary judgment. The court also finds that any claims against defendant Cargill based on the union's alleged breach of the duty of fair representation, i.e., that Cargill allegedly conspired with the union to obtain the union's breach, is also necessarily dismissed on summary judgment.

*Plaintiff's claim against Cargill for violation of the collective bargaining agreement*

Plaintiff alleges that his discharge from Cargill violated the collective bargaining

agreement because the agreement implies that an employee will not be dismissed without "cause," and plaintiff alleges that no cause existed for his discharge. In response, Cargill makes two contentions. First, Cargill contends that leaving the workplace without a supervisor's permission constitutes sufficient cause for discharge. Second, Cargill argues that plaintiff is barred from asserting this claim because the grievance procedure provided under the collective bargaining agreement is plaintiff's exclusive and final remedy. Because the court finds Cargill's second argument to be dispositive of this claim, the court will not address the merits of Kincade's discharge.

■ Given the court's decision above that summary judgment is appropriate on plaintiff's breach of duty of fair representation claim against the union, plaintiff can only maintain a claim against Cargill based on the collective bargaining agreement if the grievance and arbitration procedure contained in the agreement is not intended to be an employee's exclusive remedy for breach. *See, e.g., Smith v. Alumax Extrusions, Inc.*, 683 F.Supp. 1074, 1076 (N.D. Miss.1988) (citing *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976)). In this case, however, the court finds that the grievance and arbitration procedure contained in the collective bargaining agreement was intended to be an employee's exclusive remedy for breach of the agreement. Article VII of the collective bargaining agreement provides that any dispute or grievance relating to the agreement be submitted to management within seven days of the alleged "infraction" of the agreement. It further provides that "[g]rievances not submitted within the time limitations will be forever barred." *Cf. Los Angeles Newspaper Guild v. Hearst Corp.*, 352 F.Supp. 1382, 1383 (D.Ca.1973), *aff'd*, 504 F.2d 636 (9th Cir.1974), *cert. denied*, 421 U.S. 930, 95 S.Ct. 1656, 44 L.Ed.2d 87 (1975) (finding that similar language imposing a time limit on processing of grievances demonstrated the parties' intent that arbitration provide the exclusive remedy). Article VII then sets forth the steps of the grievance procedure and the timetable therefor. If the union decides to seek arbitration, the decision of the arbitrator "shall be final and binding on all parties involved." The article further provides that "no grievance shall be subject to arbitration unless it has been processed through all the steps of the grievance procedure."

Although the word "exclusive" is not used in the agreement, the court finds that the language and structure of the agreement as a whole evince a clear intent that employees' grievances, such as Kincade's claim that his termination violates the collective bargaining agreement, be determined exclusively through the grievance procedure rather than through resort to the courts; thus, plaintiff's claim in this action that his discharge violates the collective bargaining agreement is barred. *See Lancaster v. Norfolk & Western Ry. Co.*, 773 F.2d 807, 816 (7th Cir.1985), *cert. denied*, 480 U.S. 945, 107 S.Ct. 1602, 94 L.Ed.2d 788 (1987). The court further finds that this conclusion is supported by the strong public policy favoring non-judicial resolution of labor-management disputes. *See Vaca*, 386 U.S. at 191, 87 S.Ct. at 917; *see, e.g., Mitchell v. Hercules, Inc.*, 410 F.Supp. 560, 569 (S.D.Ga.1976). Because the court finds that the grievance and arbitration procedure contained in the collective bargaining agreement was intended to be Kincade's exclusive remedy for an alleged breach of the collective bargaining agreement, the court will grant summary judgment for defendant Cargill on plaintiff's claim that his termination breached the collective bargaining agreement.

Because the court finds that no federal question basis for jurisdiction remains in this case, and because a basis for diversity jurisdiction has not been pled with regard to the remaining defendant Cargill, the court declines to exercise pendent jurisdiction over the remaining state law-based claims in this lawsuit. *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966); *Carey v. Continental Airlines, Inc.*, 823 F.2d 1402, 1404–05 (10th Cir.1987); *Jones v. Inter-*

*mountain Power Project,* 794 F.2d 546, 549 (10th Cir.1986). Therefore, the court will dismiss the remaining claims without prejudice.

IT IS BY THE COURT THEREFORE ORDERED that defendant American Federation of Grain Miller's motion for summary judgment is hereby granted.

IT IS FURTHER ORDERED that defendant Cargill, Inc.'s motion for summary judgment is granted in part and denied in part, as consistent with the above opinion.

IT IS FURTHER ORDERED that plaintiff's remaining state-law based claims for wrongful and retaliatory discharge are hereby dismissed without prejudice.