928 F.2d 1133
 138 L.R.R.M. (BNA) 2160
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Guy OWEN, Plaintiff-Appellant,
v.
GOODYEAR TIRE AND RUBBER COMPANY, et al., Defendants-Appellees.
 No. 90-5721.
 United States Court of Appeals, Sixth Circuit.
 March 26, 1991.
 
 On appeal from the United States District Court for the Western District of Tennessee, 85-01282, Todd, J.
 W.D.Tenn.
 AFFIRMED.
 Before DAVID A. NELSON and SUHRHEINRICH, Circuit Judges, and HACKETT, District Judge.*
 PER CURIAM.
 
 
 1
 This is a hybrid breach of contract/unfair representation action against an employer and a labor union. Summary judgment was entered for the defendants, and the plaintiff employee has appealed. Finding no error, we shall affirm the judgment.
 
 
 2
 * Defendant Goodyear Tire & Rubber Company closed its plant in Jackson, Michigan, in March of 1984. At the time of the closing plaintiff Guy M. Owen had been employed there for approximately fifteen years. Mr. Owen advised Goodyear of an interest in becoming a maintenance mechanic at another Goodyear plant.
 
 
 3
 Mr. Owen was represented by the United Rubber, Cork, Linoleum and Plastic Workers of America, an international labor union that had entered into a collective bargaining agreement with Goodyear. The agreement provided that vacancies in maintenance positions at Goodyear facilities would be filled, where possible, by recalling laid off employees or posting the available jobs and accepting bids on them from employees at the facility where the vacancies existed. Should a maintenance position not be filled in this manner, the agreement further provided, the job would be offered to a "preferential hire" candidate such as Mr. Owen--an employee who had been released from employment as the result of another Goodyear plant being closed and who had filed a written application for the job in question. Only if the position could not be filled thus would Goodyear be free to take a candidate from outside the company.
 
 
 4
 Soon after the closure of the Jackson plant, Mr. Owen filed a preferential hire application for a maintenance position at a Goodyear plant in Union City, Tennessee. The application was received at the Union City facility on March 27, 1984.
 
 
 5
 There had been three vacancies in maintenance positions at the Union City plant in March of 1984. One of the positions was filled by a preferential hire applicant other than Owens. The other two positions were filled by outsiders, Robert Wade and David Sergerson. Wade and Sergerson took and passed the required physical exams on March 26, 1984--one day before the receipt of Owens' application--and they were told (Wade on March 26 and Sergerson on March 27) that they could begin work on April 2, 1984.
 
 
 6
 Goodyear subsequently hired several people for summer work in the Union City plant's maintenance department. It was Goodyear's understanding that the employment of the temporary hires would be terminated on September 3, 1984, and that they would have no recall rights. The local union at the Union City plant (Local 878) presented a grievance over the company's failure to accord recall rights to the temporary hires, relying on a local union-management agreement that said that such employees should receive the same treatment as other surplused maintenance employees, including the opportunity to be placed on the recall list. Goodyear was prevailed on to place the temporary hires on layoff status. Under the collective bargaining agreement, this put them in line to be recalled when Goodyear needed more maintenance people. The temporary hires were in fact recalled later in the year.
 
 
 7
 Plaintiff Owen and union representatives from the closed Jackson plant complained to Goodyear in January of 1985 about Owen's failure to receive a job at the Union City facility. The next available Union City maintenance job went to Mr. Owen without its having been posted, and he began work on February 18, 1985. Local 878 filed a grievance over the company's failure to post Owen's job, but subsequently withdrew the grievance.
 
 
 8
 After reporting to work in February, Mr. Owen approached Local 878 about filing a grievance over Goodyear's delay in hiring him. He claimed that Goodyear had violated the collective bargaining agreement both by hiring Wade and Sergerson before hiring him and by failing to give him preference when the temporary summer employees were recalled.
 
 
 9
 At a meeting held between Goodyear and Local 878 to discuss this matter in June of 1985, Goodyear persuaded the union that there had been no breach of the collective bargaining agreement. The union declined to file a formal grievance on Owen's behalf. Owen appealed the decision to Local 878's executive committee, but the committee adhered to the view that Owen's complaints lacked merit.
 
 
 10
 In December of 1985 Mr. Owen sued Goodyear, Local 878, and the international union in the United States District Court for the Western District of Tennessee. The complaint alleged that Goodyear had violated the collective bargaining agreement by hiring new employees in Union City in violation of plaintiff Owen's preferential hire rights, and it alleged that Local 878 had violated its duty of fair representation by declining to file a grievance on Mr. Owen's behalf. (By subsequent agreement among the parties, the international union was dismissed from the lawsuit.)
 
 
 11
 Resting its decision partly on statute of limitations grounds, the district court entered summary judgment in favor of Local 878 in March of 1990. On motion for reconsideration, the court decided that summary judgment was not appropriate on the statute of limitations issue; the court held, however, as it had earlier, that there had been no showing of any triable issue as to a breach of the local's duty of fair representation. The court also granted a motion for summary judgment in favor of Goodyear. Mr. Owen has perfected a timely appeal.
 
 II
 
 12
 This court must review a district court's grant of summary judgment de novo, viewing the case in the light most favorable to the nonmoving party. Pachla v. Saunders System, Inc., 899 F.2d 496, 498 (6th Cir.1990). The question we must ask is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir.1989) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)).
 
 
 13
 Unions have a statutory duty to represent bargaining unit employees fairly and impartially in disputes arising out of an employer's failure to comply with its collective bargaining agreements. Vaca v. Sipes, 386 U.S. 171, 177 (1967). A union violates this duty if its conduct toward its member is "arbitrary, discriminatory, or in bad faith." Id. at 190. If a union handles a grievance capriciously or perfunctorily, it runs the risk that its conduct may be sufficiently arbitrary to establish a breach of the duty of fair representation. Poole v. Budd Co., 706 F.2d 181, 183 (6th Cir.1983). But although an employee need not necessarily show bad faith, mere negligence or mistaken judgment is insufficient to establish a breach of the union's duty. Id. Finally, failure to make out a case against the union for breach of the duty of fair representation forecloses recovery against the employer for breach of the collective bargaining agreement. Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry, 110 S.Ct. 1339, 1344 (1990).
 
 III
 
 14
 Mr. Owens contends that genuine issues of material fact remain as to whether the local union violated its duty of fair representation in failing to file grievances with respect to both the hiring of the temporary summer employees and the hiring of Messrs. Wade and Sergerson. We are satisfied that Mr. Owen has no justifiable case on either count.
 
 A. Temporary Summer Employees
 
 15
 Article XI of Goodyear's supplemental agreement with Local 878 provides, in pertinent part, that "[w]hen cause for temporary vacancy ceases to exist, labor hired for such vacancy will be ... handled as a surplus maintenance employee." The agreement confers various rights upon surplus maintenance employees, including the opportunity to be placed on the recall list. Mr. Owen concedes that "the local Union's supplemental agreement in Article XI of the collective bargaining agreement would seem to indicate that temporary employees should be surplused and placed on recall status after the end of the temporary positions...." He argues, however, that the supplemental agreement is subordinate to the master agreement and that the latter agreement gives him preferential hire rights that could not be overridden.
 
 
 16
 As the district court noted, "[t]he issue to be decided by the court is not which interpretation is correct. Instead, the court must decide if Local 878's interpretation of the collective bargaining agreement was reasonable." The local union's interpretation was sufficiently reasonable to be accepted by the company, which had no particular ax to grind, and union officials testified at their depositions that they personally believed that the collective bargaining agreement required temporary workers to be placed on layoff status with recall rights. Mr. Owen presented no evidence that this belief was unreasonable, arbitrary or capricious; he chose instead to rely solely on the proposition that the union's position was unreasonable per se.
 
 
 17
 Like the district court, we are not persuaded. The union argues that Mr. Owen was not offered a temporary job because preferential hire candidates are not eligible for such jobs. Because employees on lay-off status retain their seniority under the agreement and preferential hires come in as new employees, the union further argues that the laid off temporary employees were properly recalled before Mr. Owen was hired. We cannot say that this argument is unreasonable.
 
 B. Sergerson and Wade
 
 18
 The union and Goodyear both insisted that Wade and Sergerson were hired on March 27, 1984, even though they did not actually start work until several days later. Be that as it may, Mr. Owen made no showing that the company was not at least correct in saying that the men had been notified of the acceptance of their applications prior to the receipt of Owen's application. The court concluded that "even if Plaintiff could prove at trial that Sergerson and Wade were hired after his application was received, Plaintiff could not prove that it was not reasonable for Defendant Local 878 to take the position that they were hired before the application [was received]." The district court also concluded that the union's actions were not perfunctory; the court noted, in this connection, that the union president asked a Goodyear official about the hiring dates of Sergerson and Wade, that the union president spoke with Owen, and that the union president met with Owen and a Goodyear official to discuss the problem.
 
 
 19
 At his deposition, William Miller, the Manager of Industrial Relations at the Union City plant, testified without contradiction that although he was unaware of a written policy, it has been Goodyear's practice to consider a person hired when a job offer has been extended and accepted. Richard Johnson, Manager of the EEO and Governmental Personnel Relations for Goodyear, testified that at the time the Union City plant received Owen's preferential hire application, the company had already committed itself to hire the outside applicants. The union president testified that Miller had told him that the two new employees had been hired prior to the receipt of Owen's application and that this was why he did not file a grievance on Owen's behalf.
 
 
 20
 Mr. Owen admits in his brief that he discussed his situation with the union president, that he had a meeting with the union president and a Goodyear official about his complaints, and that he pursued the matter through all internal appeal processes within the union. We think that the record as a whole establishes, as the district court found, that it was not arbitrary, capricious, or discriminatory for the union to conclude that Owen's grievance lacked merit. We also agree with the court's conclusion that the union did not treat Owen's complaints in a perfunctory manner.
 
 C. Animosity Toward Owen
 
 21
 Mr. Owen contends that genuine issues of material fact exist as to whether the local union acted from an improper motive in declining to file a grievance on his behalf. For the reasons stated by the district court, we are persuaded that this contention too must fail.
 
 
 22
 AFFIRMED.
 
 
 
 *
 The Honorable Barbara Hackett, United States District Judge for the Eastern District of Michigan, sitting by designation