978 F.2d 1258
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Madison ANDERSON, Plaintiff-Appellant,
v.
UNITED AUTO WORKERS LOCAL 36; International Union, United
Automobile, Aerospace and Agricultural Implement
Workers of America, UAW; Ford Motor
Company, Defendants-Appellees.
 Nos. 91-2099, 91-1973.
 United States Court of Appeals, Sixth Circuit.
 Oct. 30, 1992.
 
 Before KEITH and BATCHELDER, Circuit Judges, and HOOD, District Judge.*
 PER CURIAM:
 
 
 1
 Seven plaintiffs,[1] who are waste treatment operators employed by Ford Motor Company ("Ford") at its Wixom Assembly Plant in Wixom, Michigan, filed this hybrid § 301 unfair employment action against Ford, the International Union, United Automobile Workers ("UAW"), and UAW Local Union 36 ("Local Union"). The plaintiffs filed this complaint in August of 1990 in the Eastern District of Michigan following their unsuccessful attempt to obtain relief before an impartial labor umpire. The district court granted the defendants' motion for summary judgment dismissing the complaint with prejudice. For the reasons stated below, we AFFIRM.
 
 I.
 
 2
 In response to the November 1984 regulations adopted by the U.S. Environmental Protection Agency, Ford contracted with independent contractors to perform work at its Wixom Plant site. The new regulations required that all hazardous waste lagoons be licensed or withdrawn from service by November 8, 1988. The work performed by the independent contractors included the dewatering of five settling lagoons, and cleaning sludge drying beds. The nine or so contractors began work in June 1985, and worked twelve hours a day, seven days a week until 1988.
 
 
 3
 During this time, plaintiffs were members of Ford's waste treatment group and worked full time, as well as some overtime, at their normal jobs. Appellant Madison Anderson ("Anderson") joined the waste treatment group in 1986, replacing one of the waste treatment operators who retired. Anderson worked full-time and performed normal duties in this position and in his previous position as a cleaner. When offered overtime, however, Anderson seldom accepted. These employees complained to the Local Union that they had been "replaced" in violation of Article IV, Section 8[2] of the collective bargaining agreement. Prompted by these complaints, the Local Union began the grievance process.
 
 
 4
 Unsuccessful grievances were filed at the local level. An appeal to an impartial umpire followed, handled by David Curson, a representative from the International Union. Curson had previously handled between twenty and fifty grievances at the umpire level.
 
 
 5
 Curson interviewed the waste treatment operators and Local Union officials, meeting with each witness at least twice. In his deposition, he stated that he sought outside consultation and reviewed precedential umpire awards. The umpire's opinion, issued in this case, states that Curson raised, among other things, "that the work of pumping waste water from the lagoons by the outside contractor had consistently and traditionally been performed by the Waste [Treatment Operators], and that "the Aggrieved were denied the overtime work that was usually available to them."
 
 
 6
 The umpire found that there was no significant difference between the pumping done by the independent contractors and the pumping historically done by Ford waste treatment employees. The umpire concluded, however, that the pumping done by the independent contractors was "an integral part of the clean up work performed by the outside contractors" to comply with the EPA regulations. The umpire also concluded that the Ford waste treatment employees were not entitled to overtime work, noting that "the undisputed evidence does suggest that all Waste [Treatment Operators] were working 40 hours per week on their regular jobs."[3] Thus, the umpire denied the grievance.
 
 
 7
 The seven Ford Waste treatment operators filed this complaint alleging that Ford breached its collective bargaining agreement with the UAW and the Local Union by hiring outside contractors "to perform the work of waste water management, replacing Plaintiff seniority employees in work normally and historically performed by the union." The plaintiffs also alleged that the Union and the Local Union had represented the plaintiffs in a "discriminatory, arbitrary, and perfunctory manner, breaching its duty of fair representation in its unsuccessful grievance before the umpire."
 
 
 8
 Ford and the unions moved for summary judgment. The trial court issued its ruling in open court stating the following:
 
 
 9
 The Court has examined the record with regard to the Plaintiffs' claim against the Union and finds it to be lacking. The Court has examined the pleadings as well as the exhibits which have been submitted to the Court and, in particular, the Court has examined the affidavit of David Curson, who served as a representative of the UAW during the hearing in which he represented the Union and its members, specifically, the Plaintiffs, in their claim against the Ford Motor Company.
 
 
 10
 The Plaintiffs specifically attacked Mr. Curson and contend that, as noted during the close of the arguments which have just been completed, that Mr. Curson, among other things, failed to comply or to follow their recommendations or suggestions with regard to the conduct of the hearing; and, secondly, that he failed to abide by the prior umpire rulings which, in the opinion of Mr. Melican, counsel for the Plaintiffs, are either instructive or binding upon the umpire.
 
 
 11
 As a brief footnote, the Court while recognizing that prior umpire opinions are instructive, this Court does not believe that there is case law that indicates that the decision of a prior umpire is binding upon a subsequent umpire decision. But even if that representation or that statement is incorrect, the Court does not believe that, in looking at the record in its entirety, that the Plaintiffs' contention has any merit whatsoever. As noted, the Plaintiff must show that the Union and/or its representative acted in bad faith or acted discriminatorily or acted arbitrarily. There is no evidence of any of those factors before this Court.
 
 
 12
 Just at the closing of Mr. Melican's comment, there was reference to some other matters in which one or more of the Plaintiffs may have been involved. If that is the case, this Court was unaware of it and clearly was not made aware of it through these pleadings. More specifically and more importantly, there is no evidence that Mr. Curson was aware of these alleged problems that existed or exist between the Plaintiffs and their Union; and, thus, the Court cannot impute that to Mr. Curson.
 
 
 13
 In looking at the affidavit which has been attached to the Union's brief, and specifically under tab six (sic), he has affixed to his affidavit, among other things, notes that he prepared in advance of the umpire hearing, copies of the umpire cases that he cited in support of his clients' positions, umpire decisions that, quote, stand for the proposition that no new evidence, including written briefs, can be submitted at the umpire stage of the grievance proceeding, end of quote, and among other things, photographs--strike that--the reasons for his decisions not to put in the Plaintiffs' photographs into evidence.
 
 
 14
 It very well may be that, upon reflection and retrospectively, that Mr. Curson should have introduced the photographs or should have followed the Plaintiffs' advice with regard to the conduct of the hearing, but an advocate of a position is given certain discretionary rights, and the court must accept the judgment of the advocate unless it appears to be clearly below the standards of reasonable advocacy, and that had the evidence been produced and introduced into evidence, that it would have likely caused a difference in the decision. There is no evidence to suggest that that would have occurred; thus, the Court concludes that the breach of duty of fair representation has not been manifested by the record. Thus, the motion for summary judgment which has been brought by the UAW against the Plaintiffs must be granted."
 
 
 15
 In view of the concession by the parties that the Plaintiffs must produce evidence to support its contention against both parties, the motion for summary judgment by the Ford Motor Company must also be granted.
 
 
 16
 The district court filed its order granting summary judgment for Ford and the Union on July 23, 1991. Madison Anderson is the sole plaintiff on appeal.
 
 II.
 
 17
 We review a grant of summary judgment, de novo, construing the evidence and drawing all inferences from that evidence in the light most favorable to the nonmoving party. Kraus v. Sobel Corrugated Containers, 915 F.2d 227, 229 (6th Cir.1990). The party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). Moreover, "[i]n a hybrid suit under § 301 of the Labor Management Relations act "to recover against either the Company or the Union, [the plaintiff] must show that the Company breached the Agreement and the Union breached its duty of fair representation.... Unless [the plaintiff] demonstrates both violations, he cannot succeed against either party." Bagsby v. Lewis Bros., Inc. of Tennessee, 820 F.2d 799, 801 (6th Cir.1987) (emphasis in original and citations omitted).
 
 A.
 
 18
 The Supreme Court has recently reaffirmed the standard for reviewing a union's representation of its members. In Airline Pilots Association International v. O'Neill, 499 U.S. ----, 111 S.Ct. 1127, 113 L.Ed.2d 51 (1991), the Supreme Court stated:
 
 
 19
 [T]he rule announced in Vaca v. Sipes, 386 U.S. 171, 190, 17 L.Ed.2d 842, 87 S.Ct. 903 (1967)--that a union breaches its duty of fair representation if its actions are either "arbitrary, discriminatory, or in bad faith"--applies to all union activity, including contract negotiation. We further hold that a union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a "wide range of reasonableness," Ford Motor Co. v. Huffman, 345 U.S. 330, 338, 97 L.Ed. 1048, 73 S.Ct. 681 (1953), as to be irrational.
 
 
 20
 Airline Pilots Assoc., 113 L.Ed.2d at 58. The Sixth Circuit has stated that "[i]n order to succeed on a fair representation claim, a plaintiff must make a showing that the union acted in bad faith or handled the grievance in a perfunctory or arbitrary manner." Deringer v. Columbia Transportation Division, Oglebay Nortion, 866 F.2d 859, 864 (6th Cir.1989). "Ordinary negligence, mistake, error or flaws in judgment by the union representative do not constitute a breach of the union's duty." Poole v. Budd Co., 706 F.2d 181, 184 (6th Cir.1983).
 
 
 21
 On appeal, Anderson first argues that the UAW[4] failed to effectively advocate that the original plaintiffs had traditionally earned overtime for the work that was done by the independent contractors. This contention is undermined by the umpire's decision which expressly addressed the union's argument that overtime was "usually available to them". Moreover, the umpire specifically held that the denial of overtime was not a "grievable loss."
 
 
 22
 Anderson also argues that Curson did not produce arguments and evidence that the tasks performed by the independent contractors were historically performed by waste treatment operators. He alleges that Curson failed to sufficiently grasp the technical aspects of the procedures used, failed to follow the tactical suggestions of the grievants, and did not present photographic evidence that was crucial to the grievance. This deficiency, Anderson contends, was essential to his claim for denial of overtime.
 
 
 23
 Anderson's contention, here, first ignores the fact Curson did make this argument before the umpire, and the umpire agreed that the work performed by the independent contractors was markedly similar. Moreover, any validity to the claim is undermined by the umpire's determination that potential loss of overtime was not grievable. Note also that any possible tactical errors in the representation were at most errors in judgment, but not at all prejudicial or arbitrary. Poole v. Budd Co., 706 F.2d 181, 184 (6th Cir.1983). Finally, it should be noted that Anderson's charge that the UAW had personal animosity against the plaintiffs in this action is without foundation. Accordingly, the UAW did not breach its duty of fair representation, and the district court properly dismissed the claim on the summary judgment motion.
 
 B.
 
 24
 Anderson also contends on appeal that Ford Motor Company violated the collective bargaining agreement. The United States Supreme Court has determined that the result of an employee grievance resolved in accordance with the finality provisions of the collective bargaining agreement is subject to very limited judicial review. See DelCostello v. International Brotherhood of Teamsters, 462 U.S. 151, 164 (1983). This Circuit has further explained:
 
 
 25
 [F]ederal courts do not have plenary power to review the merits of an arbitration decision. Rather, the courts should defer to the agreed upon tribunal's interpretation of the contract "as long as the award draws its essence from the bargaining agreement."
 
 
 26
 Apperson v. Fleet Carrier Corp., 879 F.2d 1344, 1353 (6th Cir.1989), cert. denied, 110 S.Ct. 2206 (1990) (citations omitted).
 
 
 27
 Anderson also challenges the district court's ruling that "there was not a breach of Article IV Section 8 of the collective bargaining agreement." The evidence in this case indicates, as the umpire found, that the independent contractors were not doing work "normally and historically performed" by seniority employees and that Anderson was not "replaced" by these contractors.
 
 
 28
 The independent contractors were hired solely to clean out and close the lagoons and drying beds at the Wixom plant in an attempt to comply with EPA regulations and prepare the site for new waste treatment. The umpire correctly determined that some overlap existed in the pumping done by the independent contractors and the waste treatment group. For the independent contractors, this pumping, however, was an integral part of the larger project of the cleaning out and closing the beds. The overall project that was completed by the independent contractors in 1988 was not work normally or historically performed by the Waste treatment operators.
 
 
 29
 Additionally, Anderson was not replaced as a result of the work done by the independent contractors. He was a full time employee of Ford throughout the entire tenure of the independent contractors at the Wixom Plant site. He was first a cleaner, and then, upon the retirement of a waste treatment operator, he assumed that position. His argument that he was "replaced" because he was denied overtime rings hollow for two reasons. First, as the umpire ruled, and Anderson conceded in his deposition, Anderson has no right to overtime. Second, Anderson was offered overtime work in the position that he held, yet Anderson has conceded that he declined most of the overtime offered to him. Accordingly, Ford did not violate the collective bargaining agreement, and summary dismissal of the claim by the district court was proper.
 
 III.
 
 30
 For the foregoing reasons, we AFFIRM the summary judgment dismissal of the Honorable Julian C. Cook, Chief Judge for the United States District Court for the Eastern District of Michigan.
 
 
 31
 BATCHELDER, Circuit Judge, concurring.
 
 
 32
 I concur in the opinion of the majority. However, I write separately to note that because of the nature of an hybrid section 301 action, in order for the plaintiff to have prevailed, he was required to prove both that the employer's action violated the terms of the collective bargaining agreement and that the Union breached its duty of fair representation. Local No. 391 v. Terry, 110 S.Ct. 1339, 1344 (1990). Therefore, our holding that the plaintiff did not prove that the Union breached its duty of fair representation is dispositive of the claim against Ford.
 
 
 33
 Inasmuch as we are not required to reach the merits of the claim against Ford, anything which we may say with regard to it amounts, in my judgment, to mere dicta.
 
 
 
 *
 The Honorable Joseph M. Hood, United States District Judge for the Eastern District of Kentucky, sitting by designation
 
 
 [1]
 Madison Anderson, Ronald Jaworski, Bruce Dawson, Jr., Ernest Derose, Stuart Rindfusz, Andreas R. Bageris, and John Springall were the seven plaintiffs
 
 
 [2]
 Article IV, Section 8 reads in pertinent part:
 It is the policy of the Company that employes (sic) of an outside contractor will not be utilized in a plant or parts and supply depot covered by this Agreement to replace seniority employees on production assembly or manufacturing work, warehousing work, or fabrication of tools, dies, jigs and fixtures, normally and historically performed by them, when performance of such work involves the use of Company-owned machines, tools or equipment maintained by Company employees.
 This policy shall not affect the right of the Company to continue arrangements currently in effect; nor shall it limit the fulfillment of warranty obligations by vendors nor limit work which a vendor must perform to prove out equipment.
 It is the policy of the Company to fully utilize its seniority employes (sic) in the skilled trades (Appendix F) in the performance of maintenance and construction work, in accordance with its letter to the Union of January 20, 1949. It is the Company policy in all cases, except where time and circumstances prevent it, to have advance discussion with local Union representatives prior to letting such a contract. In this discussion local Management is expected to review its plans or prospects for letting a particular contract. The local Union should be advised of the nature, scope and approximate dates of the work to be performed and the reasons (equipment, manpower, etc.) why Management is contemplating contracting out the work. At such times, Company representatives are expected to afford the Union an opportunity to comment on the Company's plans and to give appropriate weight to those comments in the light of all attendant circumstances.
 In no event shall any seniority employe (sic) who customarily performs the work in question be laid off as a direct and immediate result of work being performed by any outside contractor on the plant premises.
 
 
 [3]
 Note also that the plaintiffs have admitted thyat the collective bargaining agreement does not guarantee that union members will work more than 40 hours per week. R34 Anderson Dep. 66, 67, 73, 74; R33 Bageris Dep. 19-21; R31 Jaworski Dep. 89; R30 Rindfusz Dep. 231; R37 Dawson Dep. 3-5; R35 Springall Dep. 26-27; R27 Herndon Affadavit Exhibits 52 and 53; R24 Lee Dep. 54
 
 
 [4]
 Counsel for the UAW and the Local Union argues that Anderson has effectively abandoned his claim against the Local Union on this appeal. We agree that the appellant's brief and oral argument were concerned primarily with the actions that Mr. Curson took as a representative for the International Union